Michael David KOSTER *v.* STATE of Arkansas

CR 07-1160 286 S.W.3d 152

Supreme Court of Arkansas
Opinion delivered June 26, 2008

*Cindy M. Baker*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Michael David Koster appeals his convictions for possession of methamphetamine and possession of drug paraphernalia. Koster was sentenced to three years' imprisonment on each count to be served concurrently. Koster raises several points for reversal, contending that the circuit court

erred (1) in denying his motion to dismiss, where after jeopardy attached, a mistrial was declared sua sponte, without the consent of Koster, and absent evidence a mistrial was manifestly necessary; (2) in denying his posttrial motion to dismiss the conviction for possession of a controlled substance, because it is a lesser-included offense of possession of drug paraphernalia; (3) in denying his motion to suppress evidence obtained as a result of his unlawful arrest; (4) in denying his motion to suppress statements that were not only tainted by his unlawful arrest, but which were admitted absent evidence of a valid waiver; and (5) in denying his motion to continue after allowing the State to dismiss two counts in the information, effectively amending the information, which was a surprise that prejudiced the defense. We affirm the circuit court.

### Mistrial

Koster first contends that double jeopardy barred the State from trying him a second time after the circuit court declared a mistrial during his first trial. Koster states that the circuit court sua sponte declared a mistrial without his consent and absent evidence a mistrial was manifestly necessary. The State contends that the circuit court was within its discretion to declare a mistrial based on overruling necessity due to a sequence of events initiated by defense counsel, so double jeopardy did not preclude him from being retried.

This court reviews a circuit court's denial of a motion to dismiss on double jeopardy grounds de novo. *Williams v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007). When the analysis presents itself as a mixed question of law and fact, the factual determinations made by the circuit court are given due deference and are not reversed unless clearly erroneous. *See Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006). However, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed de novo, with no deference given to the circuit court's determination. *Id.*

Koster was charged with a number of criminal offenses in addition to the two offenses for which he was convicted, including drug-related crimes, domestic-abuse crimes, and criminal use of a prohibited weapon. With regard to the latter offense, the State alleged that Koster possessed a bomb, in violation of Ark. Code Ann. § 5-73-104(a)(1) (Repl. 2005). The device was discovered when officers were searching Koster's place of business, Green

Forest Body Shop, after going there to question him about a domestic disturbance. Chief John Bailey of the Green Forest Police Department described the device as a cylinder six to seven inches long and two to three inches in diameter, wrapped in black electrical tape, with a fuse.

Koster's first jury trial began on September 27, 2005. Green Forest Police Officer Verlin Griggs testified that he found the device when he opened a drawer of a toolbox in Koster's shop. Griggs testified that, later, he was blocking traffic approximately two blocks away when the "bomb went off," and that he "felt the repercussion from the bomb on my back." Bailey testified that the blast felt like a "shock wave" that traveled through his body, and he stated that the blast broke windows in Koster's building, caused marks on the wall, and charred the asphalt where the device had been detonated.

Drew Deason, a senior bomb technician for the Springdale Police Department, was called to the scene after the device was found. Deason described the device as being "very unstable," noting that it was powerful as "a stick of dynamite, if not a little more." He testified that, hypothetically, if such a device were to go off in the middle of the courtroom, it would cause, "extreme, severe bodily injury, if not death" to those located in close proximity and that the "windows and walls [of the courtroom] could possibly be blown out from the blast-over pressure." A videotape of the detonation was played for the judge and jury, and Deason testified that the detonation caused a "considerable" fireball.

After the State rested, Koster called his friend, Scott Tucker, to testify. Koster's attorney at trial and on appeal, Cindy Baker, produced an explosive device and showed it to Tucker. Tucker described the device as similar to the one he had seen in Koster's shop in Koster's toolbox. Tucker stated that Koster purchased the devices on July 4, 2002, and that one of them had been lying "in the top of [Koster's] toolbox for at least a year."

Later, during Tucker's testimony, the trial judge asked Baker to hand him the device. After inspecting the device, the judge stated that he could not tell if it had been disarmed. Baker asked Tucker if it had been disarmed, and Tucker replied, "I couldn't tell you." The judge then determined that the device he was holding had not been disarmed, and he requested that the bailiff remove it from the courthouse. After a discussion at the bench concerning

Baker's bringing the device into the courthouse, the bailiff stated: "Mr. Gordon is calling the bomb expert back. He recommends the courthouse be cleared."[1] The device, according to the bailiff, was on the curb in front of the courthouse. The judge stated he was not going to clear the courtroom, and Baker resumed questioning Tucker. Subsequently, during Tucker's direct testimony, the bailiff informed the judge that, upon the advice of Mr. Rogers, the courthouse was being evacuated.[2] After discussing the matter with counsel, the judge recessed until the next morning.

When court resumed the following day, Baker informed the court that she had filed a motion to dismiss the counts against Koster. The basis of the motion was that, by detonating the device she had brought into the courtroom, the State had destroyed exculpatory evidence in that the device would allow the jury to see that the explosive was a legal item and that Koster did not violate the law by possessing it. The motion further asserted that, contrary to the State's contention that the device was a "homemade bomb," the device was a "legal, commercially available firecracker," purchased from a local fireworks dealer. The motion averred that the State acted in bad faith when the officers destroyed the explosive and that the exculpatory nature of the evidence required dismissal of all of the counts against him. In addition, the motion also requested individual voir dire of the jurors because outside the courthouse, after court was adjourned the previous day, some members of the jury had seen the police activity concerning the explosive device.

Over Koster's objection, the judge construed Koster's motion to dismiss as one for a mistrial. The judge disagreed with Koster's argument that the destruction of exculpatory evidence required dismissal of the charges and noted that he was not convinced that the device was exculpatory. The judge further stated that he had heard no evidence that the device had been destroyed. The judge noted that, without seeking permission to do so, Baker had brought a live, explosive device into the courtroom.

---

[1] It is not clear from the record whether the bomb expert, presumably Deason, or Mr. Gordon, who is not identified in the record, recommended that the courthouse be cleared.

[2] The prosecuting attorney in this case was Tony Rogers, who was in the courtroom during Tucker's testimony. It is not clear from the record whether the "Mr. Rogers" who recommended the evacuation was, in fact, the prosecutor or someone else named Rogers who may have been in a position to know what was occurring outside of the courthouse, or if the bailiff merely misstated the name of the person who had ordered the evacuation.

Accordingly, the judge determined that Baker's actions had resulted in a delay of the case and that the trial could not be completed in the time the court had allotted for it. Both the prosecutor and Baker acknowledged that, on the previous day, some of the jurors had watched the police activity concerning the explosive device. The judge then ruled that "the actions of the defendant have resulted in a situation where the proceedings in this case are unalterably compromised," and he declared a mistrial.

The judge dismissed the jury, explaining that he was declaring a mistrial for three reasons:

> The first reason is that, yesterday, there occurred an introduction into the courtroom of an explosive device without adequate safeguards and without prior permission from the Court, which caused an unnecessary delay in these proceedings, and the trial cannot be completed within the time allowed the Court for this case, and the Court's docket next week provides no opening for which this case could be readily heard.
>
> Secondly, the State and defense agree that several members of the jury panel watched police activity outside of the courtroom concerning the explosive device. I do not have information as to whether or not all of you observed the explosion or the proceedings of the police or not, and if some of you did observe them and some — in any event, it appears that members of the jury have information about this case or that may concern this case which may influence your decision and have evidence outside of the courtroom, or that you have obtained outside of the courtroom.
>
> The third reason is that the defendant has filed a motion to dismiss in this case in regard to the preservation of evidence. There is no way that the Court can act on the facts and allegations alleged in the motion without further delaying this case. The Court is, therefore, treating the motion to dismiss as a motion for a mistrial filed by the defendant. The Court, therefore, does declare a mistrial, and you are excused.

On November 7, 2005, Koster filed a motion to dismiss, alleging, *inter alia*, that double jeopardy barred retrial because the mistrial was declared over his objection and there was no overruling necessity for the court to stop the trial. The circuit court denied the motion at a hearing held November 21, 2005, and made the following findings:

[T]he Court . . . held that this was a matter of over-riding necessity. It is my belief that the over-riding necessity perhaps even occurred as early as the time Ms. Baker took the device out of the — out of the sack, or whatever it was she had it in, and laid it on the witness stand, in full view of the jury. No party made any motions, at that time, but then the jury observed the Court's reaction to the device.

The jury saw the Court ask — and heard the Court ask Ms. Baker what the device was. The jury heard Ms. Baker's response. The Court ordered the bailiff to remove the device from the courtroom. The jury saw me do that. After the device was removed from the courtroom, the jury was present when the bailiff returned to the Court on at least two occasions. And it is believed, by me, to be outside of the hearing of the jury, observed the bailiff whispering to us. And then, on the second occasion, the jury was instructed — at some point in that proceeding, in that interval, the jury was instructed to disregard seeing the device.

At that point, the proceedings were recessed. The regular jury instruction for recesses was read to the jury. The jury was taken out of the courtroom. What they had seen was a round, cylindrical device, photographs of which have been admitted in the history of this case. A round cylindrical device approximately six inches long by an inch in circumference, and — or an inch in diameter, rather, and with a fuse coming out of one end. Out of the side of one end. It appeared to be an explosive device.

After hearing reports from the State and the defense that the State had — or that the State had — or that jurors had been observed watching the attempted destruction of the device, the Court, on it[s] own motion, declared a mistrial for the reason that members of the jury received information, outside of the courtroom, from which they could have received misleading information and/or would have made them witnesses, themselves, to this case.

Both the Fifth Amendment to the United States Constitution and article 2, § 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. *See Williams, supra.* The Double Jeopardy Clause protects criminal defendants from: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Hughes v. State,* 347 Ark. 696, 702, 66 S.W.3d 645, 648 (2002).

"A former prosecution is an affirmative defense to a subsequent prosecution for the same offense . . . [if] [t]he former prosecution was terminated without the express or implied consent of the defendant after the jury was sworn . . . unless the termination was justified by *overruling necessity*." Ark. Code Ann. § 5-1-112(3) (Repl. 2006) (emphasis added). The "overruling necessity" requirement in the statute comports with the federal standard of "manifest necessity," as articulated in *Arizona v. Washington*, 434 U.S. 497, 505 (1978):

> Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.

(Footnote omitted.)

The United States Supreme Court has noted that "a criminal trial is, even in the best of circumstances, a complicated affair to manage." *United States v. Jorn*, 400 U.S. 470, 479 (1971). "[A] mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide." *Id.* at 480. Accordingly, the Court has, "for the most part, explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial." *Id.* This court, too, has recognized the difficulty of categorizing cases involving claims of double jeopardy and the resulting inadequacy of expounding any standard formula for guidance. *See, e.g., Jones v. State*, 288 Ark. 162, 702 S.W.2d 799 (1986) (citing *Arizona v. Washington, supra; Illinois v. Somerville*, 410 U.S. 598 (1973)). To that end, each case must turn largely on its facts. *Jones, supra* (citing *Arizona v. Washington, supra; Illinois v. Somerville, supra*). We have

stated that the State bears the burden of proving a manifest necessity, which is a circumstance that is "forceful and compelling" and is "in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care." *Williams, supra* (citing *Jones, supra*, and *Cody v. State*, 237 Ark. 15, 371 S.W.2d 143 (1963)). It is within the circuit court's discretion to determine whether there is an "overruling necessity" that requires the grant of a mistrial, and we will not disturb that ruling absent an abuse of discretion. *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991)).

Koster contends that the circuit court erred in declaring a mistrial because any error could have been corrected by curative relief and because there were alternatives to declaring a mistrial. He states:

> [Koster offered] an availability to mitigate the harm caused to the Defense in the trial. Koster offered the alternative of allowing the Court to enter an Order requiring the turn over of photographs, recordings, or pictures of the item [the explosive device] to be turned [over] to the Defense for evaluation and potential use. Further, Koster requested that all parties be allowed to voir dire the jury as to any potential evidence that may have been received, so that prejudicial effect, if any, could be determined. Finally, Koster offered to "work around" the provision of the items being sought, by taking witnesses out of order, until the items could be viewed and a determination of legal sufficiency for use made by the defense.

The State contends that the trial judge was presented with an "unprecedented situation" that originated with the defense, and, based on his superior position to observe the jury's observation of his own reaction when Baker first produced the device, along with the judge's detailed and reasoned explanation for granting the mistrial, the trial judge did not abuse his discretion by finding that there was overruling necessity for terminating the trial. We agree.

The circuit court reasoned that there was no basis to dismiss the case against Koster and, as such, it considered Koster's motion to dismiss as one for a mistrial, based on the relief the motion sought. The circuit court declared a mistrial the following day, after it learned that jurors had watched the activities outside of the courthouse. It is apparent that the circuit court was concerned that the impact of seeing those activities outside of the courtroom

had tainted the jury so that an admonition to disregard those observations would not cure the problem. Therefore, the circuit court declared a mistrial sua sponte, over the objections of both the State and the defense, based on the overruling necessity because the jury had been exposed to matters outside of the courtroom that could affect its judgment with regard to at least one of the charges — criminal use of a prohibited weapon — Koster was facing. The circuit court did not abuse its discretion in finding that there was an overruling necessity for terminating the trial. Therefore, the Double Jeopardy Clause did not preclude the State from bringing Koster to trial a second time.

■ Koster also contends that the circuit court erred by not allowing him to present evidence at his second trial concerning his affirmative defense of double jeopardy. He contends that, because Ark. Code Ann. § 5-1-112 (Repl. 2006) states that a subsequent prosecution for the same offense is an "affirmative defense," the circuit court erred by refusing to allow him to present to the jury at his second trial evidence about the circumstances that resulted in the mistrial at his first trial. The circuit court ruled that the defense was one "of law and not a defense of fact," and that Koster could not present evidence to the jury concerning the mistrial, given that the declaration of a mistrial is discretionary with the trial judge. In effect, Koster wanted the second jury to decide, as a question of fact, if the trial judge had abused his discretion by declaring the mistrial at his first trial. The circuit court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *See, e.g., Elser v. State,* 353 Ark. 143, 114 S.W.3d 168 (2003). The State correctly points out that Koster's argument, if successful, would allow a jury to usurp this court's function by deciding whether there was an abuse of discretion as a question of fact, rather than requiring the issue to be reviewed on appeal as a matter of law. It is not the jury's function to decide if the circuit court made an error; that is the function of the appellate court. The circuit court did not err in refusing to allow Koster to present to the jury at his second trial evidence about the circumstances that resulted in the mistrial during the first trial.

### Lesser-Included Offenses

Koster was convicted of both possession of methamphetamine and possession of drug paraphernalia. He claims that the

circuit court erred in denying his posttrial motion to dismiss the conviction for possession of methamphetamine because it is a lesser-included offense of possession of drug paraphernalia. Thus, he claims that his being sentenced for both crimes is a double-jeopardy violation.

Pursuant to Ark. Code Ann. § 5-1-110(b) (Repl. 2006), an offense is a lesser-included offense of another if the offense:

> (1) Is established by proof of the same or less than all of the elements required to establish the commission of the offense charged;

> (2) Consists of an attempt to commit the offense charged or to commit an offense otherwise included within the offense charged; or

> (3) Differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish the offense's commission.

. Koster asserts that felony possession of drug paraphernalia required proof of all of the elements of possession of a controlled substance, as evidenced by the jury's query in this case. During deliberations, the jury sent out the following questions: "What is the difference between the two charges, drug paraphernalia and possession of a controlled substance? Please clarify. Can he be guilty of one and not guilty of the other?" The jury was brought back into the courtroom, and the circuit court reread the jury instructions to the jury. The jury then retired to continue deliberations.

Arkansas Code Annotated § 5-64-401(c)(1) (Repl. 2006) makes it "unlawful for any person to possess a controlled substance," except in certain circumstances that are inapplicable in the instant case. Arkansas Code Annotated § 5-64-403(c)(1)(A)(i) (Repl. 2006) provides that it is

> unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.

The plain language of the statutes shows that possession of a controlled substance does not require the simultaneous possession of paraphernalia, and possession of paraphernalia does not require the simultaneous possession of a controlled substance. Because the elements of the two offenses can be completely exclusive of each other, neither offense is included in the other.

Still, Koster suggests that, in cases where the drug is found in a container, possession of the drug is included in the possession of the container. In this case, various items of drug paraphernalia were admitted, including a Carmex jar that contained methamphetamine. Koster contends that the questions submitted by the jury during its deliberations, asking if a person could be guilty of one of the offenses but not the other suggests that it did not believe he possessed any paraphernalia other than the Carmex jar, even though other items of drug-related paraphernalia, such as tin-foil aluminum boats and pipes, were found in Koster's shop.

We find no merit in Koster's argument. First, there is nothing in the statutes defining the offenses that make an exception for Koster's suggested "container" scenario. Further, regardless of what prompted the jury to ask those questions during the course of its deliberations, at the end of its deliberations, it convicted him of both offenses. In sum, Koster has failed to demonstrate that possession of methamphetamine is a lesser-included offense of possession of drug paraphernalia. The circuit court did not err by sentencing him for both offenses.

*Motion to Suppress Evidence*

Koster asserts that the circuit court erred in denying his motion to suppress evidence as a result of his unlawful arrest. In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Sheridan v. State*, 368 Ark. 510, 247 S.W.3d 481 (2007). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *See Ilo v. State*, 350 Ark. 138, 85 S.W.3d 542 (2002). Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Id.*

Officer Shannon Hill of the Green Forest Police Department was dispatched to Koster's residence on October 17, 2003, based on a report of a domestic disturbance. Hill testified that, at

the Koster home, he took statements from neighbors and Koster's wife, Laura. Hill learned that Koster hit Laura, threw candles and dishes at her and their small child, and threatened Laura. Hill also learned that Koster shook Laura and left marks on her. Hill and another officer were subsequently sent to Koster's shop to arrest Koster on charges related to the domestic incident. Hill spoke to Koster, asked him what had happened, and told him that he was under arrest based on the domestic disturbance at the Koster home. While talking to Koster at the shop, Hill noticed some "tin-foil boats" containing a residue, and based on his training in detecting narcotics, he believed it was the residue of methamphetamine. Hill testified that he then asked Koster for consent to search. Hill noted that he read the form to Koster and informed Koster that he did not have to give consent to search. According to Hill, Koster read the form himself and then filled out and signed the form, granting consent. Hill stated that Koster was kept at the shop during the search, was allowed to watch the search, and was told he could stop the search at any time. The search resulted in the seizure of drug-related items, including pipes; pieces of tin foil containing residue; marijuana; seeds; and methamphetamine in a Carmex jar, as well as an explosive device.

Green Forest Police Department Sergeant Brad Handley testified that, at Koster's house, he learned that Koster had thrown some plates at Laura and that he had thrown a large candle at her while she was holding a child. Handley testified that, as soon as Hill arrested Koster at the shop, Handley read Koster his *Miranda* rights.

Koster and Laura both testified at the suppression hearing and disputed the majority of the officers' testimony. Laura testified that Koster never struck her and that the police were just supposed to go down to the shop and talk to him. Koster testified that, at the time he signed the consent form, the police had already begun the search at the shop. Koster said the only reason he signed the form is because he did not want the police to "tear my shop up." Koster further stated that he was not told that he had a right to refuse the search or that he had the right to stop the search at any time.

The circuit court is not required to believe the testimony of any witness, especially that of the accused, since he or she is the person most interested in the outcome of the proceedings. *See Harper v. State*, 359 Ark. 142, 194 S.W.3d 730 (2004). Here, the circuit court obviously believed the testimony of the officers over that offered by Koster and Laura.

Koster also claims that he was illegally arrested, in violation of Arkansas Rule of Criminal Procedure 4.1 (2003), because officers had no probable cause to arrest him. Officers may make a warrantless arrest if they have "reasonable cause to believe that such person has committed acts which constitute a crime under the laws of this state and which constitute domestic abuse as defined by law against a family or household member." Ark. R. Crim. P. 4.1(a)(iv). Rule 4.1(c) provides that "[a]n arrest shall not be deemed to have been made on insufficient cause . . . solely on the ground that the officer . . . is unable to determine the particular offense which may have been committed." Rule 4.1(d) states that "[a] warrantless arrest by an officer not personally possessed of information sufficient to constitute reasonable cause is valid where the arresting officer is instructed to make the arrest by a police agency which collectively possesses knowledge sufficient to constitute reasonable cause." Here, Hill was dispatched to the Koster home after police received a domestic-disturbance call. Hill arrested Koster after learning from Laura and the neighbors that Koster had thrown dishes and candles at Laura and their child, had shaken Laura, leaving marks on her, and threatened her. Based on that information, Hill had reasonable cause to believe that Koster had committed an offense involving the domestic abuse of his wife and child, even if he did not articulate the specific offense.

Rule 4.1(a)(iv) provides that the arrest must be made within four hours of the alleged abuse if no physical injury occurred, or within twelve hours if physical injury was involved. Laura testified that she called the police some time after 1:00 p.m. Hill testified that he was dispatched at approximately 3:20 p.m., and that Koster was arrested thirty to forty-five minutes later.[3] Thus, there is no issue that the arrest was delayed beyond the time limits under Rule 4.1(a)(iv). Based on the foregoing, there is no merit to Koster's argument that his arrest was invalid pursuant to Ark. R. Crim. P. 4.1.

---

[3] In his brief, Koster cites Hill's testimony that he arrived at Koster's shop at approximately 7:30 to 7:45 p.m. to arrest him for domestic-abuse charges. Koster neglected to refer to the remainder of that testimony, where Hill explained that his report, which reflected the time of 7:30 to 7:45 p.m., contained a typographical error. This testimony, while not abstracted by Koster, is contained in the record. We remind Koster that his abstract "should consist of an *impartial* condensation . . . of . . . material parts of the testimony of the witnesses . . . as are necessary to an understanding of all questions presented to the Court for decision." Ark. Sup. Ct. R. 4-2(a)(5) (emphasis added).

■ Koster also suggests that police officers entered his shop in violation of his Fourth Amendment right against unreasonable searches and seizures. We disagree. As the State points out, the officers observed tin-foil boats in plain view in Koster's shop, a commercial business establishment open to the public. What a person knowingly exposes to the public is not a subject of Fourth Amendment protection. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Therefore, the officers were legally entitled to be there when they saw the tin-foil boats. Koster fails to demonstrate that the officers conducted an illegal search on his shop. Consequently, there is no merit to Koster's argument that the evidence must be suppressed as fruit of the poisonous tree. Where the tree is not "poisonous," neither is the fruit. *See Tryon, supra.*

### Motion to Suppress Statements

Koster contends that statements he gave to the police should be suppressed because there is no evidence that he waived his *Miranda* rights and because the State did not call witnesses who may have been present during his statements. Koster refers to two statements he made to police. The first occurred when a police dog alerted in Koster's shop, and Koster told the police that there was methamphetamine in a Carmex jar. The other statement occurred when Koster told the police that the substance in the Carmex jar was crystal methamphetamine and that he would not use "homemade crap."

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Harper, supra.* In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.*

Handley testified at the suppression hearing that he Mirandized Koster after Hill placed Koster under arrest. Koster appears to contend that Handley's testimony alone does not prove that he was Mirandized. The credibility of witnesses who testify at a suppression hearing is for the trial judge to determine, and the court defers to the superior position of the trial judge in matters of credibility. *Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007). Moreover, Koster does not argue that either of his statements was

the result of interrogation or coercion by the police. A defendant may waive an invocation of his or her right to silence. *See Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002). Specifically, choosing to speak with law enforcement officers following a statement that attempts to invoke the right to remain silent may waive that right by implication. *See Young v. State*, 373 Ark. 41, 281 S.W.3d 255 (2008).

Here, Koster does not claim that he invoked his right to remain silent. Nor does he assert that he was coerced into making statements. The record reflects that, after Koster was Mirandized, he made the two statements at issue. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnotes omitted). Koster does not contend that any such activity occurred here.

Koster also argues that the State violated the material-witness rule by not producing at the suppression hearing all officers who may have been present when he made the statements. Koster is precluded from raising this issue on appeal because he did not raise the issue before the circuit court. Issues not raised at trial will not be addressed for the first time on appeal. *See, e.g., Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). We hold that the circuit court did not err in denying Koster's motion to suppress statements he made to the police.

*Motion for Continuance*

Koster contends that he was prejudiced when the circuit court refused to grant a continuance when the State dismissed certain counts against him on the morning of trial due to the unavailability of key witnesses. He asserts that the dismissal of those charges "amended" the information and changed the way he prepared to defend the case against him. The standard of review for alleged error resulting from the denial of a continuance is abuse of discretion. *Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008). Absent a showing of prejudice by the defendant, we will not reverse the decision of the circuit court. *Price v. State*, 365 Ark. 25, 223 S.W.3d 817 (2006). When a motion to continue is based on a

lack of time to prepare, we will consider the totality of the circumstances. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007).

The record reveals that on the morning of Koster's second trial, the prosecutor moved to dismiss counts four and five of the information, misdemeanor assault of a household member and terroristic threatening. The prosecutor explained that, with the passage of time since the crimes occurred, Laura Koster had left the state and another witness to those events was no longer capable of testifying. Koster argued that, had he known he would not face those counts, he would have subpoenaed Laura to testify about the drug-related charges, because she could provide testimony about who, other than Koster, had access to the shop. Koster explained that, when he faced the terroristic threatening and assault charges, he "had no interest in subpoenaing [Laura] for trial, as she would be a material element for the State . . . and without her, the State could not meet their burden of proof beyond a reasonable doubt." The circuit court ultimately denied a continuance, but allowed Koster to attempt to subpoena the witnesses that he had previously failed to subpoena.

The State disputes Koster's basic premise that the dismissal of criminal charges constitutes an amendment to the information and points out that Koster has cited no cases that have ever held that to be the case. We agree. However, even if we were to construe the dismissal of charges to be an amendment to the information, a defendant cannot complain about an amendment when, as here, the changes made are wholly to his advantage. *E.g.*, *Huckaby v. State*, 262 Ark. 413, 557 S.W.2d 875 (1977). The State is entitled to amend an information at any time prior to the case being submitted to the jury so long as the amendment does not change the nature or degree of the offense charged or create unfair surprise. *DeAsis v. State*, 360 Ark. 286, 200 S.W.3d 911 (2005).

Koster knew all along of the offenses with which he was charged. The State did not seek to amend the information to change the nature or degree of any of the crimes with which he was charged. Koster was on notice from the outset of all the crimes at issue, and it was his responsibility to prepare to defend himself against those charges, including by subpoenaing any witnesses that he believed would offer testimony pertinent to any of those charges. Defense counsel made a strategic decision not to subpoena certain witnesses because their testimony might be unfavorable to

the defense in some ways, although helpful in other ways. We hold that the circuit court did not abuse its discretion in denying Koster a continuance.

Affirmed.