2009 Ark. 257

**Johnny Elmo MORGAN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1330.**

Supreme Court of Arkansas.

May 7, 2009.

Robert S. Blatt, Fort Smith, for appellant.

Dustin McDaniel, Att'y Gen., by: LeaAnn J. Irvin, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

Appellant Johnny Elmo Morgan appeals the judgment of the Scott County Circuit Court convicting him of manufacturing methamphetamine, possession of drug paraphernalia with the intent to manufacture methamphetamine, first-degree endangering the welfare of a minor, manu-

facturing methamphetamine in the presence of a minor, and manufacturing methamphetamine near certain facilities.[1] He was sentenced to a total of 480 months' imprisonment. On appeal, Morgan argues that the circuit court erred in denying his motion to suppress evidence and that the evidence was insufficient to support the convictions.

The Arkansas Court of Appeals issued an opinion finding that the evidence was insufficient to support the convictions. *See Morgan v. State*, CACR 08–306, 2008 WL 4821000 (Ark. Ct. App. Nov. 5, 2008). Accordingly, the court of appeals reversed and dismissed the case. The State then petitioned this court for review of the court of appeals's decision. We granted the State's petition for review pursuant to Arkansas Supreme Court Rule 1–2(e). When we grant review of a decision by the court of appeals, we review the case as though the appeal was originally filed in this court. *See Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). Upon such review, we find no error and affirm the judgment of conviction.

The record reveals the following facts. On March 8, 2007, the district court issued a search warrant for the residence Morgan shared with Amy Smith. The warrant was issued based upon the affidavit of Sergeant Joey Deer, of the Scott County Sheriff's Office, explaining that he had reason to believe that Morgan's residence was being used to conceal certain illegal property, namely, methamphetamine and/or drug paraphernalia. The affidavit further stated that a confidential informant, who had been proven credible by making at least two controlled-substance purchases that led to the confiscation/seizure of illegal narcotics, had made a controlled buy of

---

1. The later two counts are enhanced-penalty statutes. While the jury convicted Morgan of the conduct described in both statutes, they chose only to enhance his sentence based upon finding him guilty of manufacturing methamphetamine in the presence of a minor.

methamphetamine within the last forty-eight hours from the Morgan residence.

At trial, Heath Tate, of the Fifteenth Judicial District Drug Task Force, testified that he executed the warrant at Morgan's residence. When the warrant was executed, Morgan was not present, but Smith and another woman were standing outside the single-wide mobile home. Two children, both of whom were Morgan's, and a fifteen- or sixteen-year-old juvenile were inside. Two more of Morgan's children later arrived on a school bus.

Tate testified that there was an unlocked metal outbuilding approximately thirty to forty feet behind the trailer, as well as a "semi-trailer box." Tate acted as the evidence custodian and, according to his log, the following evidence was found: a glass smoking pipe, a plastic bag, three corners of plastic bags, and a plastic bag containing a white powder substance, all located in the north bedroom of the residence; and two light bulbs, a rolled dollar bill, a straw, and a roll of plastic bags, all located on top of the refrigerator in the kitchen. He testified that the pipe could be used for smoking methamphetamine, that a controlled substance could be wrapped in a plastic bag corner, and that the light bulb had been hollowed out and could be used to smoke methamphetamine. Both light bulbs had discoloring which, as Tate testified, suggested they had been used to smoke methamphetamine. Tate also noted that the plastic bags could be used for delivery of methamphetamine and that the corners of the bags are also commonly utilized as a way to handle methamphetamine.

The evidence log also reflects that the police found the following evidence in the outbuilding: a camp stove; an "active" HCL generator; two one-gallon containers of muriatic acid; a one-gallon container of lighter fluid that was one-half full; coffee filters; two glass containers; a paper towel with red residue; a glass container holding one pound of salt; two glass containers holding unknown liquids; two empty charcoal starter containers; an empty salt package; plastic tubing; "ten generators made of plastic 20 oz. bottles"; a "green metal ammo can containing numerous matches"; and a plastic cardboard box containing seven pints of hydrogen peroxide. Tate testified that the "active" HCL generator, which had a tube coming out of it, was used in the manufacture of methamphetamine. Though listed as part of the items found in the outbuilding, Tate stated that the ten, twenty-ounce plastic bottles were found "outside the metal building just laying around the yard" between the residence and the building. Keith Vanravensway, of the Scott County Sheriff's Office, had participated in the search and stated that he found them scattered around the back yard in a twenty-five-to fifty-yard radius. Tate testified that the bottles had been used as generators because they contained salt inside, which is used to gas off the methamphetamine. Tate further testified that the striker plates had been removed from the matches, which is consistent with the manufacture of methamphetamine.

Sergeant Deer also assisted in the search of Morgan's residence. Deer testified that there was a metal outbuilding, a trailer for an eighteen wheeler, an old swimming pool, thirty or forty salvage vehicles, and other buildings. He also stated that the back yard was "grown up." According to Deer, there was no fence between the residence and the outbuilding.

Phillip Johnston, a forensic chemist with the Arkansas State Crime Laboratory, testified that the burned residue in the pipe was methamphetamine and dimethyl sulfone, which is a common cutting agent that is combined with a drug to increase

the weight of the drug. He stated that the white powder in the plastic bag was 0.2199 grams of dimethyl sulfone. Johnston also tested the residue in the light bulb and the straw and found it was also methamphetamine and dimethyl sulfone. He found methamphetamine, phosphorus, and iodine residue on the stained paper towel and concluded that it was evidence of manufacturing methamphetamine. The unknown liquids found in a glass container did not contain any controlled substance, but one contained an acid, which is used in the manufacture of methamphetamine. Johnston testified that an HCL generator is a plastic bottle with salt and sulfuric acid mixed in the bottom. He further testified that a hole can be made in the cap of the bottle, through which a tube is inserted, and gas then exits the bottle through the tube. Johnston concluded that the plastic bottle found with the tubing might indicate the manufacture of methamphetamine and that a gas stove can be used in the manufacture of methamphetamine. He also testified that lighter fluid, muriatic acid, phosphorus, plastic tubing, charcoal fluid, salt, hydrogen peroxide, and iodine are used in the manufacture of methamphetamine. On cross-examination, Johnston acknowledged that he did not know when the manufacturing process would have taken place and that he could not determine how long ago someone used the HCL generator that had the tubing.

Larry Garner, a five-year agent of the Fifteenth District Drug Task Force, testified that, upon investigation and consideration of the materials present, he concluded it was a methamphetamine lab. In his opinion, the ten HCL generators made from the plastic bottles were old and inactive, but that the one with the tubing was still active. He stated that each one indicated a separate manufacturing process.

On appeal, Morgan argues that the jury's verdicts were not supported by substantial evidence. Although Morgan raises this issue as his final point on appeal, double-jeopardy concerns require that we review arguments regarding the sufficiency of the evidence first. *See Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). The State first argues that this argument is not preserved for appeal. In the alternative, the State argues that substantial evidence supports the convictions.

Our standard of review for a sufficiency challenge is well settled. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *See Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *See id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *See id.*

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *See id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *See id.* The credibility of witnesses is an issue for the jury and not the court. *See id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *See id.*

We first address the State's assertion that this issue was not properly preserved for appeal. The State argues that Morgan failed to preserve this argument because he did not renew his directed-

verdict motion. The State is mistaken. Morgan offered no testimony or evidence in his defense. We have held, under these circumstances, that the close of the State's case and the close of all the evidence occur simultaneously, and there is no need to renew the motion for a directed verdict to preserve the earlier sufficiency argument. *See Bell v. State,* 371 Ark. 375, 266 S.W.3d 696 (2007). Therefore, this issue was preserved for our review.

Morgan contends that the evidence presented at trial was all circumstantial and was insufficient to support the convictions because nothing linked him to the contraband seized. Specifically, he argues that the HCL generators were old and not tested to confirm that they were HCL generators and that "no fingerprint testing was done on any of the items seized from the yard and outbuilding, which was unlocked and open to anyone, to demonstrate any connection between [Morgan] and the seized items." He further notes that none of the State's witnesses could testify as to when there had been a manufacture of methamphetamine. The State avers that proof of constructive possession is sufficient to support the conviction and that exclusive possession is not necessary as long as the place where the contraband was found was under the dominion and control of the accused.

The first count of which Morgan was convicted was unlawfully manufacturing methamphetamine in violation of Ark. Code Ann. § 5–64–401(a)(1) (Supp.2007). Arkansas Code Annotated § 5–64–101(16) (Supp.2007) defines manufacture as follows:

(A) "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from a substance of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis.

(B) "Manufacture" includes any packaging or repackaging of a controlled substance or labeling or relabeling of a controlled substance's container.

Furthermore, he was found to be in violation of Ark.Code Ann. § 5–64–403 (Supp. 2007), which states, in pertinent part, that "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine." Ark.Code Ann. § 5–64–403(c)(5).

According to the testimony of Sergeant Deer, a confidential informant made two controlled-buy purchases from Morgan's residence before a search warrant was obtained. A field test conducted on the substances recovered during these controlled buys tested positive for methamphetamine. As previously noted, drug paraphernalia and several items used in the manufacture of methamphetamine were seized from Morgan's residence, yard, and an outbuilding located thirty to forty feet behind the residence.

Although Morgan was not present at the residence at the time of the search, it is not necessary that the State prove literal physical possession of contraband. *See Dodson v. State,* 341 Ark. 41, 14 S.W.3d 489 (2000). Contraband is deemed to be constructively possessed if the location of the contraband was under the dominion and control of the accused. *See Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998). We have held that constructive possession exists where joint occupancy of the premises occurs and where there are additional factors linking the accused to the contraband. *See Embry v. State,* 302 Ark. 608, 792 S.W.2d 318 (1990). Those additional factors include: (a) whether the accused exercised care, con-

trol, and management over the contraband; and (b) whether the accused knew the material was contraband. *See id.; see also Crossley v. State,* 304 Ark. 378, 802 S.W.2d 459 (1991). This control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *See Plotts v. State,* 297 Ark. 66, 759 S.W.2d 793 (1988).

In the instant case, pursuant to a valid search warrant, the contraband was found in the kitchen and a bedroom of Morgan's residence, strewn about his yard, and in an outbuilding directly behind his residence. Mr. Garner testified that he concluded the materials found in the search were the components of a methamphetamine lab. While ten of the HCL generators were old and inactive, in Garner's opinion, one found was still active. Traces of methamphetamine were found in the pipe, light bulb, and straw. The stained paper towel contained traces of methamphetamine, phosphorus, and iodine residue, which Garner and Phillip Johnston, a forensic chemist, testified are all consistent with the manufacture of methamphetamine. Other specific items seized, such as the lighter fluid, muriatic acid, phosphorus, plastic tubing, charcoal fluid, salt, hydrogen peroxide, and iodine were all also said to be consistent with the manufacture of methamphetamine by the State's witnesses.

On appeal, Morgan's argument focuses on what evidence was not presented at trial to prove his guilt. However, after reviewing the evidence introduced at trial in the light most favorable to the State and considering only the evidence supporting the verdict, we conclude that there was substantial evidence to support the jury's verdict. Therefore, we affirm the convictions for manufacturing methamphetamine and possession of drug paraphernalia with the intent to manufacture methamphetamine.

Arkansas Code Annotated § 5–27–205(a)(1) instructs that a person commits the offense of first-degree endangering the welfare of a minor if, "being a parent ... he or she purposely ... [e]ngages in conduct creating a substantial risk of death or serious physical injury to a minor." Ark.Code Ann. § 5–27–205(a)(1) (Repl.2006). In the instant case, at least two of Morgan's minor children were present in the residence at the time of the search. Drug paraphernalia was found inside the residence and in the yard, both locations that children could easily access. Furthermore, dangerous chemicals and other components of a methamphetamine lab were found in the unlocked outbuilding behind the residence. We cannot say that Morgan's conviction for endangering the welfare of a minor or the sentence enhancement he received for manufacturing methamphetamine in the presence of a minor were not supported by substantial evidence and, therefore, we affirm.

For his second point on appeal, Morgan contends that the search warrant in the instant case was defective because it was obtained by allegedly false and misleading information provided to the judge who issued it. The State argues that the circuit court properly denied Morgan's motion to suppress. We do not find the search warrant defective and agree that Morgan's motion to suppress was properly denied.

In deciding whether to issue a warrant, the magistrate should make a practical, common-sense determination based on the totality of the circumstances set forth in the affidavit. *See Stanton v. State,* 344 Ark. 589, 42 S.W.3d 474 (2001).

Thus, when reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *See Koster v. State,* 374 Ark. 74, 286 S.W.3d 152 (2008). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *See id.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *See id.*

On appeal, Morgan argues that the information provided by Sergeant Deer in his affidavit obtaining the search warrant was so deficient and lacking in indicia of probable cause, reliance upon the search warrant issued was unreasonable, and the circuit court should have granted his motion to suppress the evidence. Specifically, Morgan contends that there was no basis upon which to gauge or assess the reliability of the confidential informant because Sergeant Deer did not know the confidential informant before the Morgan investigation and because the two controlled buys that Sergeant Deer referenced in his affidavit had been controlled buys in this case, at the residence in question, rather than in previous cases. Further, Morgan argues that while Sergeant Deer believed he had made a thorough search of the confidential informant before each controlled buy, he admitted that he did not search under the confidential informant's shoe inserts.

Arkansas Rule of Criminal Procedure 13.1 governs the issuance of search warrants. Rule 13.1(b) generally requires that where an affidavit or testimony is based in whole or in part on hearsay, the affiant shall set forth particular facts bearing on the informant's reliability.

However, Rule 13.1(b) also provides that the failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied if the affidavit or testimony, viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

This is not a case in which the search warrant was based on pure hearsay or in which the reliability of the informant was completely unknown. There is no fixed formula in determining an informant's reliability. *See Stanton v. State, supra.* Factors to be considered in making such a determination include whether the informant's statements are: (1) incriminating; (2) based on personal observations of recent criminal activity; and (3) corroborated by other information. *See Stanton v. State, supra.*

Here, the confidential informant's information was corroborated by his personal observations and corroborated by the personal observations of officers Tate and Deer. The controlled buy was corroborated by the participation and observation of officers Tate and Deer: Sergeant Deer searched the informant and his vehicle for any illegal contraband or monies; the informant was given money to make the controlled buy; Tate and Deer followed the informant to a location near Morgan's residence; and, Tate and Deer observed the informant walk into the residence, stay approximately two minutes, and return with drugs. Sergeant Deer's account of the drug buy, alone, was sufficient to establish probable cause to search Morgan's home for drugs and other contraband. *See Langford v. State,* 332 Ark. 54, 962 S.W.2d 358 (1998) (holding that an officer's account of a controlled buy, made by an informant, was, by itself, sufficient to es-

tablish probable cause for issuance of a search warrant).  We *do not find the fact* that the officers did not search under the confidential informant's shoe inserts of consequence as both Deer and Tate personally observed the controlled buys in their entirety other than the short amount of time that the confidential informant was inside Morgan's home.  Considering the totality of the circumstances, that fact, alone, does not obliterate the probable cause established.

The facts in the affidavit, as a whole, provided a substantial basis for determining that reasonable cause existed to believe that items related to the sale of controlled substances would be found in Morgan's residence.  Accordingly, the circuit court's denial of Morgan's motion to suppress was not clearly against the preponderance of the evidence, and we affirm.

Affirmed;  court of appeals reversed.