2011 Ark. 8

Alex BLUEFORD, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 10–554.

Supreme Court of Arkansas.

Jan. 20, 2011.

Rehearing Denied Feb. 24, 2011.

Sharon Kiel, Deputy Public Defender, by: Clint Miller, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant Alex Blueford brings this interlocutory appeal from the order of the Pulaski County Circuit Court denying his motions to prevent his retrial on a pending capital-murder charge because of double-jeopardy protections. On appeal, Blueford asserts that jeopardy attached and prevents his retrial because the jury determined during his trial that he was not guilty of capital murder and its lesser-included offense of first-degree murder. We find no error and affirm.

The record reflects that on July 15, 2008, Appellant was charged with capital murder in violation of Ark.Code Ann. § 5–10–101(a)(9)(A) (Repl.2006) based on the State's allegation that Blueford, acting under circumstances manifesting an extreme indifference to the value of human life, caused the death of Matthew McFadden, Jr., a person fourteen years of age or younger. Appellant was initially tried in August 2009. Following the presentation of evidence, the circuit court instructed the jury on the pertinent definitions of capital murder, first-degree murder, manslaughter, and negligent homicide. The circuit court also gave the transitional instruction, AMI Crim.2d 302, to guide the jury's transition from one offense to the next. The

transitional instruction provided in relevant part that "if you have a reasonable doubt of the defendant's guilt on the charge[d offense or lesser included offense just considered], you will then consider the charge of [the next lesser included offense]."

During deliberations, the jury submitted a note to the circuit court stating that "a juror would like to know what happens if we cannot agree on a charge at all." The jury was returned to the court room and the circuit court gave an "Allen instruction," requesting that they retire for further deliberations in an attempt to reach a verdict. The jury sent out a second note indicating that they remained deadlocked. When the jurors returned to the courtroom, the following colloquy took place between the circuit court and the jury forewoman:

THE COURT: All right, Court's back in session. Madam foreman, the Court has a note from the jury stating, (as read), "The jury cannot agree on any one charge in this case."

Are you telling this Court that you're hopelessly deadlocked on every charge?

JUROR NUMBER ONE: I'm not sure I understand what you mean, sir. To consider—

THE COURT: Well, you're obviously in your agreement—any—any charge, conviction of any charge, or even a not guilty finding has to be unanimous. All 12 have to agree.

JUROR NUMBER ONE: Right.

THE COURT: My question to you is, are you so deadlocked that you're not going to be able to reach an agreement no matter how long we stay here tonight?

JUROR NUMBER ONE: I would say that statement would be true, yes.

THE COURT: Well, that's not my statement, that's a question.

JUROR NUMBER ONE: Oh, the answer is yes, we are deadlocked.

THE COURT: All right, hopelessly?

JUROR NUMBER ONE: I would say so, sir, yes.

THE COURT: All right. If you have your numbers together, and I don't want names, but if you have your numbers I would like to know what your count was on capital murder.

JUROR NUMBER ONE: That was unanimous against that. No.

THE COURT: Okay, on murder in the first degree?

JUROR NUMBER ONE: That was unanimous against that.

THE COURT: Okay. Manslaughter?

JUROR NUMBER ONE: Nine for, three against.

THE COURT: Okay. And negligent homicide?

JUROR NUMBER ONE: We did not vote on that, sir.

THE COURT: Did not vote on that.

JUROR NUMBER ONE: No, sir. We couldn't get past the manslaughter. Were we supposed to go past that? I thought we were supposed to go one at a time.

The court then stated that it appeared the jury had not completed its deliberations, and the court again requested the jury to deliberate further. While the jury resumed deliberations, counsel for Appellant requested that the court submit verdict forms to be completed by the jurors on the counts that they had decided upon. The State objected, noting that the jury had resumed its deliberations and had not yet made any findings. The circuit court denied Appellant's request. A short time later, when the jury again indicated that it had not reached a verdict, the circuit court

declared a mistrial. Neither the State nor Appellant objected to the declaration of a mistrial. Appellant's trial was then rescheduled for March 2010.

Prior to the time scheduled for retrial, Appellant filed several motions in circuit court, arguing that the Fifth Amendment's double-jeopardy provision, as well as Arkansas's double-jeopardy statutes, barred his retrial on the capital-murder charge and the lesser-included offense of first-degree murder. In support of his motions, he argued that the jury forewoman's announcement in open court that the jury had found him not guilty on those two charges amounted to an acquittal, such that he could not again be tried on those charges. The circuit court entered an order on February 26, 2010, denying Appellant's motions. In so ruling, the circuit court stated as follows:

> This Court finds, after review of the transcript of Defendant Blueford's first trial, that the jury foreperson was explicit that the jury was unanimous in voting against finding Defendant Blueford guilty of capital murder and first degree murder. However, there were no "findings" or "verdicts" as intended by the law. The jury was unable to complete its deliberations and this Court had to declare a mistrial.

The sole issue on appeal is whether the circuit court erred in finding that jeopardy had not attached, thus, allowing the State to retry Appellant on the charges of capital murder and first-degree murder. This court reviews de novo a circuit court's denial of a motion to dismiss on double-jeopardy grounds. *Koster v. State*, 374 Ark. 74, 286 S.W.3d 152 (2008). When the analysis presents itself as a mixed question of law and fact, the factual determinations made by the circuit court are given due deference and are not reversed unless clearly erroneous. *Id.* How-

ever, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed de novo, with no deference given to the circuit court's determination. *Id.* Finally, we note that a double-jeopardy claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right would have been forfeited. *See Williams v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007).

Appellant argues that we are called upon to decide the implications of Arkansas's transitional jury instruction, which is given in criminal cases where the jury is allowed to consider lesser-included offenses. According to Appellant, because the jury was instructed that it could not consider his guilt on a lesser-included offense until it made a determination on the greater offense and the jury forewoman then announced in open court that the jury had found him not guilty of capital murder and first-degree murder, he was acquitted on those two charges. Appellant further argues that entry of a formal judgment is not essential, as the jury's finding of not guilty is sufficient to bar further prosecution on those two charges. Finally, Appellant asserts that the jury determinations were final because they were not given any type of step-back instruction that would have allowed the jury to resume deliberations on the capital-murder or first-degree murder charges.

The State counters that where a jury is discharged before completion of a case, a defendant may invoke his right against double jeopardy, except in cases of overruling necessity. The State further asserts that where a defendant consents to a mistrial, there is no requirement of demonstrating overruling necessity. Thus, according to the State, Appellant, who impliedly agreed to the mistrial by failing to object to the granting of the mistrial, may

be tried again. Moreover, the State asserts that the deadlocked jury in the first trial constituted an overruling necessity warranting the mistrial.

 This court has explained as follows:

Both the Fifth Amendment to the United States Constitution and article 2, § 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. The Double Jeopardy Clause protects criminal defendants from: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense."

*Koster,* 374 Ark. at 81, 286 S.W.3d at 159 (quoting *Hughes v. State,* 347 Ark. 696, 702, 66 S.W.3d 645, 648 (2002)) (citation omitted). Thus, once the jury has been sworn and jeopardy attaches, the court can grant a mistrial without barring subsequent prosecution only if there is an "overruling necessity." *See Smith v. State,* 307 Ark. 542, 545, 821 S.W.2d 774, 776 (1992) (quoting *Wilson v. State,* 289 Ark. 141, 145, 712 S.W.2d 654, 656 (1986)). Under Arkansas law it is well settled that a deadlocked jury is a circumstance that qualifies as an overruling necessity. *Shaw v. State,* 304 Ark. 381, 802 S.W.2d 468 (1991). The decision to order a mistrial due to a jury's inability to reach a verdict is within the sound discretion of the circuit court, and will be upheld absent an abuse of discretion. *Id.*

Here, Appellant does not challenge the fact that the hung jury in the first trial was an overruling necessity that required the declaration of a mistrial. Instead, he argues that he was acquitted on the two charges by virtue of the fact that the jury, which was given the transitional instruction, announced in open court that it had found him not guilty of capital murder and first-degree murder, and he cannot now be retried on those two charges. Thus, the question at issue for this court is what effect, if any, the announcement in open court had on the State's ability to retry Appellant on those two charges.[1]

 Both the United States Supreme Court and this court have recognized that a trial ending in a hung jury is not the equivalent of an acquittal for purposes of establishing former jeopardy. *See Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) (explaining that trial court's declaration of a mistrial because of a hung jury was not an event that terminated the original jeopardy to which the defendant was subjected); *see also Prince v. State,* 304 Ark. 692, 805 S.W.2d 46 (1991). Moreover, it is axiomatic that a judgment is not valid until entered of record. *See Bradford v. State,* 351 Ark. 394, 94 S.W.3d 904 (2003). We further stated in *Bradford* that a judgment rendered in open court is not controlling until entered or filed of record. *Id.* The mere reading of the jury's verdict in open court does not constitute an acquittal. *Id.* Further, a jury's verdict may be amended before it is entered of record, before the jury has separated, and after a poll of each juror reveals that each understands the effect of the verdict. *Barnum v. State,* 268 Ark. 141, 594 S.W.2d 229 (1980).

 It is true that the foregoing cases did not address any implication of the transitional instruction. Nevertheless, neither the giving of those instructions nor

---

1. Appellant does not challenge the State's ability to retry him on the charges of man- slaughter and negligent homicide.

the forewoman's announcement in open court that the jury found Appellant not guilty on those two charges negates the bedrock principle of law that a judgment is not valid until entered of record. It is undisputed that no formal acquittal was entered of record in this case, and we find unavailing Appellant's assertion that a formal verdict of acquittal was not necessary. In support of his contention, Appellant relies on Ark.Code Ann. § 5–1–112(1)(B)(i) (Repl.2006), which provides that an acquittal occurs when the "former prosecution resulted in a determination of not guilty." But, the statutory provision for what constitutes an acquittal in no way forecloses the requirement that for an acquittal to be final it must be entered of record. If we were to accept Appellant's argument, we would be ruling contrary to years of jurisprudence, and this we will not do.

We recognize that there are prior cases where this court has stated that, in criminal cases, a general verdict is not actually required to be in writing, but may be announced orally. *Rowland v. State,* 263 Ark. 77, 562 S.W.2d 590 (1978); *Dixon v. State,* 29 Ark. 165 (1874); *Atkins v. State,* 16 Ark. 568 (1855). In *Dixon,* we explained that the verdict need not be in writing, but may be announced by the foreman of the jury orally and then entered by the clerk in proper form upon the record. Here, however, the jury forewoman was not making a formal announcement of acquittal. She was engaged in a discussion with the circuit court about the jury's deliberations and the jurors' inability to agree on a verdict. Thus, this is a not a situation where a formal verdict was announced or entered of record.

A similar issue arose in *Walters v. State,* 255 Ark. 904, 503 S.W.2d 895 (1974). There, this court rejected a double-jeopardy argument where the circuit court inquired into the deliberations, stating as follows:

Neither can we agree with appellant that the first trial resulted in an implied acquittal of all degrees in excess of involuntary manslaughter. The statements between the trial court and the jury foreman cannot be considered under the circumstances as a verdict of the jury. *See* Ark. Stat. Ann. § 43–1226 (Repl.1964).

*Id.* at 906–07, 503 S.W.2d at 897. Appellant takes issue with the applicability of *Walters* to his own case, arguing that its ruling was based on a statute that has since been repealed. According to Appellant, the repeal of section 43–1226 renders *Walters* inapplicable to the instant case. Appellant simply views the import of *Walters* too narrowly. Section 43–1226 provided that "[w]here an offense consists of different degrees, a conviction, or acquittal by judgment upon a verdict shall be a bar to another prosecution for the offense in any of its degrees." This statute, which was subsequently incorporated into Ark. Code Ann. § 16–85–712 (1987), was repealed in 2005. According to Appellant, by repealing this provision the legislature intended to abolish the formalities attendant to a final verdict by endorsing an informal determination by a jury. We agree with the State that the repeal did not indicate such a desire and was more likely the result of a desire to bring statutory authority in line with state and federal precedents and that while *judgments* are no longer required to bar subsequent prosecutions, an actual verdict is still required. Appellant also claims that *Walters* is of no moment because it does not address the issue of transitional instructions. Again, Appellant too narrowly construes *Walters.* While the case is factually distinguishable, it demonstrates that this court has rejected the notion that a discussion between the court and the jury fore-

person amounts to an acquittal where no final verdict was entered.

Although Appellant did not request that the circuit court poll the jury or request that an acquittal be entered of record, he did request that the jury be given verdict forms on the charges of capital murder and first-degree murder. In essence, what Appellant sought was a partial verdict. *See Walker v. State*, 308 Ark. 498, 825 S.W.2d 822 (1992).[2] Jurisdictions are split on the issue of partial verdicts. But, the majority of jurisdictions have held that if a single charge includes multiple degrees of offenses, the trial court may not conduct a partial-verdict inquiry as to the offenses included within the charge. *See, e.g., Richardson*, 184 P.3d 755; *People v. Hall*, 25 Ill.App.3d 992, 324 N.E.2d 50 (1975); *State v. Bell*, 322 N.W.2d 93 (Iowa 1982); *State v. McKay*, 217 Kan. 11, 535 P.2d 945 (1975); *Commonwealth v. Roth*, 437 Mass. 777, 776 N.E.2d 437 (2002); *State v. Booker*, 306 N.C. 302, 293 S.E.2d 78 (1982); *People v. Hickey*, 103 Mich.App. 350, 303 N.W.2d 19 (1981).

The minority, on the other hand, has held that double jeopardy requires a partial verdict of acquittal as to the greater offenses if the jury is deadlocked only as to the lesser offenses. *See, e.g., Stone v. Superior Court*, 31 Cal.3d 503, 183 Cal. Rptr. 647, 646 P.2d 809 (1982); *State v. Tate*, 256 Conn. 262, 773 A.2d 308 (2001); *State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319 (1980); *Whiteaker v. State*, 808 P.2d 270 (Alaska Ct.App.1991). The minority of jurisdictions that accept partial verdicts seem to focus on the fact that there can be no "manifest necessity" warranting the declaration of a mistrial where the circuit court makes no inquiry into the jury's deliberations as to the greater offenses.

*People v. Anderson*, 47 Cal.4th 92, 97 Cal. Rptr.3d 77, 211 P.3d 584 (2009).

We are simply unpersuaded by the underlying rationale supporting the minority view. Moreover, this court has rejected the concept of a partial verdict in *Walker*, 308 Ark. 498, 825 S.W.2d 822. There, the appellant's first trial ended in a mistrial because of a hung jury. During his retrial, he sought a continuance to obtain the presence of the jurors who sat on his first trial based on his assertion that they could testify that they had found him not guilty on the greater offense of capital murder. His motion was denied, and on appeal he alleged this was error. This court affirmed, stating as follows:

> Although appellant refers to a "partial verdict" when discussing the murder charges, the short answer to his argument is that the first trial resulted in a hung jury which produced no verdict at all. No double jeopardy issue exists, and the trial court did not abuse its discretion in denying appellant's motion for continuance.

*Id.* at 504, 825 S.W.2d at 825. Accordingly, we find no merit to Appellant's contention that the circuit court erred in denying his motions to prevent his retrial on the charge of capital murder and its lesser-included offenses.

Affirmed.

---

**2.** Although this court did not specifically define "partial verdict" as the term is used in the instant case, it refers to a verdict on some, but not all, of the offenses within the single charge of capital murder. *See People v. Richardson*, 184 P.3d 755 (Colo.2008).