2011 Ark. App. 763

**Lee James OWENS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1110.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Rehearing Denied Jan. 18, 2012.

Jason Lee Horton, Texarkana, for appellant.

Dustin McDaniel, Atty. Gen., Little Rock, for appellee.

WAYMOND M. BROWN, Judge.

A Miller County jury found appellant Lee James Owens guilty of possession of a Schedule II controlled substance with intent to deliver. He was sentenced as an habitual offender to 101 years' imprisonment. Owens argues on appeal that the trial court erred (1) by denying his motion to disclose the identity of the confidential

informant, (2) by denying his motion to suppress the evidence, (3) by admitting State's Exhibits 5 and 8 into evidence, and (4) by denying his motion for directed verdict.[1] We affirm.

Owens's jury trial took place on June 21, 2010. Detective Alan Keller of the Bi-State Narcotics Task Force (BNTF) testified that he and his partner received information that an unknown black male, driving a dark-colored Chrysler, was about to deliver methamphetamine to a confidential informant (CI) at the E–Z Mart located on Highway 71. According to Det. Keller, detectives went across the street from the E–Z Mart located at Highways 71 and 245 and set up surveillance. He stated that he saw a blue Chrysler pull into the parking lot but that he did not remember seeing the driver or the female passenger go into the store. Detective Keller testified that he then received information that he was at the wrong E–Z Mart. Detective Keller stated that he told the CI to call the suspected dealer and have him meet the CI at the E–Z Mart located south of the one where they were.[2] Detective Keller stated that shortly after talking to the CI, he observed the car he was watching leave the E–Z Mart and head south. He stated that a patrol unit was contacted to stop the vehicle. Appellant and his girlfriend, Ashley Howard, were subsequently arrested.[3] Detective Keller testified that he interviewed Howard following her arrest.

Officer Todd Harness testified that he was contacted by "narcotics" to make a traffic stop on appellant's vehicle. He said that he came to a location close to the E–Z Mart and witnessed the vehicle leave. Officer Harness stated that he followed the vehicle and initiated a stop when he received instructions to do so. Officer Harness said that appellant gave the name Gerald Owens when initially approached. He stated that it took appellant some time to give his age and date of birth, which according to Officer Harness, was indicative of someone being untruthful about his or her identity. Appellant was arrested for obstructing governmental operations. A canine unit was called, and the car was subsequently searched.[4] An Arkansas identification card was discovered showing appellant's real name. Officer Harness said that appellant admitted to previously smoking marijuana in the vehicle after the canine alerted on it.

Officer Kevin Bounds testified that he was called to back up Officer Harness. He stated that he performed a narcotics search of the vehicle. According to Officer Bounds, his canine partner, Bruno, alerted on the passenger side of the vehicle. When the vehicle was opened, Bruno went to the driver's seat, indicating "where the smell is the strongest." Officer Bounds gave three possibilities for Bruno's alerting on the driver's seat: (1) someone had smoked narcotics in the vehicle and the odor was trapped in the fabric of the seats; (2) narcotics were in the vehicle, under the seat, or inside the seat cushion; or (3) drugs were either on the passenger or the driver.[5] Detective Claudia Phelps of

---

1. This is the second time this case is before us. We originally remanded the case for supplementation of the record. *See Owens v. State*, 2011 Ark. App. 372, 2011 WL 1896630.

2. Testimony revealed that there were three E–Z Marts located on Highway 71.

3. Detective Keller said that he did not go to the scene of the stop.

4. Officer Harness stated that he did not search the vehicle but was present during the search.

5. In this case, drugs were found on appellant's passenger.

BNTF testified that she located narcotics on Howard after Howard informed her that appellant told Howard to hide the drugs.[6] Detective Phelps stated that Det. James Atchley took the narcotics and the glove from her and sealed it up. Detective Atchley of BNTF testified that he removed the evidence from the evidence locker and sent it for testing at the crime lab. Madison Kniskern of the Arkansas State Crime Lab testified that she received two bags in appellant's case that tested positive for methamphetamine. Appellant objected to the introduction of the drugs (Exhibit 5) and the envelope containing the glove (Exhibit 8), arguing there was a break in the chain of evidence. The court allowed the exhibits to be admitted into evidence.

Howard testified that at the time of her arrest, she had been dating appellant for only a few months. She stated that she knew appellant as "Moosey" and Gerald. According to Howard, she and appellant were at a birthday party on July 11, 2008, when appellant got a call and asked her to ride with him. She said that they were going to meet someone at E–Z Mart. She testified that, after they arrived, they received a call saying that they were at the wrong E–Z Mart. Howard stated that she answered the phone and relayed the message to appellant. She said that they left to go to the correct E–Z Mart but were subsequently pulled over. According to Howard, once they were pulled over, appellant asked her to "do something with a blue glove." She stated that she placed the glove in her pants. Howard testified that she eventually told the police that she had something on her. However, she claimed that she did not know what was in the glove. During her testimony, she was shown State's Exhibit 9, which she identi-fied as a letter appellant sent to her. She stated that she recognized the writing as that of appellant. Howard acknowledged that appellant did not sign the letter, but indicated that his nick-name "Moosey" was written at the top of the letter. The letter was introduced into evidence without objection. In the letter addressed from appellant to Howard, appellant told Howard to tell her lawyer that appellant did not know anything about the drugs in the glove. He also asked her to say that Fred Law, an individual who appellant believed set him up, gave her the drugs to hold for him. Appellant stated that he did not want to go to prison for forty years, which was what he was facing if Howard testified that he knew the dope was in the glove and that he gave her the glove. He asked her to please help him out because he would do the same for her. He concluded the letter by saying that all he was doing was trying to make a way for them.

At the conclusion of the evidence, appellant unsuccessfully renewed his prior motions and objections and moved for directed verdict. He argued that the evidence was insufficient to support the charge because there was no independent evidence to corroborate Howard's testimony that the drugs belonged to him. The jury found appellant guilty of possession with intent to deliver and sentenced him to 101 years in the Arkansas Department of Correction. He filed a timely notice of appeal. This appeal followed.

Although appellant raises his challenge to the sufficiency of the evidence in his fourth point on appeal, double-jeopardy concerns require that this court review it first.[7] In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favor-

---

6. The drugs were located inside a glove placed near Howard's stomach area.

7. See *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147.

able to the State and considers only the evidence that supports the verdict.[8] We will affirm a conviction if there is substantial evidence to support it, and substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resort to speculation or conjecture.[9]

Appellant argues that the trial court erred by denying his motion for directed verdict because there was insufficient corroboration of Howard's testimony.[10] A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense.[11] The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.[12] Corroboration must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime and not directed toward corroborating the accomplice's testimony.[13] Circumstantial evidence may be used to support accomplice testimony, but it too must be substantial.[14] Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction.[15] Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime.[16] The test for

corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the remaining evidence independently establishes the crime and tends to connect the accused with its commission.[17] It is well settled that the acts, conduct, and declarations of the accused, before or after the crime, may furnish the necessary corroboration.[18] Evidence of a defendant's attempt to influence a witness to change his or her testimony possesses independent relevance because it tends to show the defendant's knowledge of his own guilt.[19]

We must determine whether the remaining evidence connects appellant to the crime for which he was convicted. Detective Keller testified that he was informed by a CI that a black male driving a dark-colored Chrysler was to deliver methamphetamine to the CI at an E–Z Mart on Highway 71. A car matching that description pulled into the parking lot of the store, and its occupants remained in the car. The CI then called to inform Det. Keller that the suspect had not arrived at the set location. According to Det. Keller, that is when he realized that both he and the suspect were at the wrong location. Detective Keller instructed the CI to call the suspect and have him come to the E–Z Mart located down the street. Shortly after instructing the CI to make contact with the suspect, Det. Keller saw appel-

8. *Id.*

9. *Id.*

10. Howard was once a co-defendant, but the charges against her were dropped in exchange for her testimony against appellant.

11. Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl. 2005).

12. Ark.Code Ann. § 16–89–111(e)(1)(B).

13. *Camp v. State,* 2011 Ark. 155, 381 S.W.3d 11.

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.*

19. *See Wallace v. State,* 55 Ark.App. 114, 932 S.W.2d 345 (1996) (citing *Morris v. State,* 21 Ark.App. 228, 731 S.W.2d 230 (1987)).

lant's car leave the parking lot and head south, in the direction of the other E–Z Mart. Officer Harness was instructed to make a traffic stop on the vehicle, and Officer Bounds acted as back up. Officer Bounds had his canine go around the stopped vehicle. Bruno alerted on the passenger side of the vehicle, giving the officers probable cause to search the vehicle. Once the door was opened, the dog alerted on the driver's seat. Detective Phelps was called to the scene to search Howard. Howard admitted to Det. Phelps that she had something concealed on her body. Detective Phelps testified that Howard informed her that appellant had given her the glove to hide once the vehicle was stopped. While in jail on these charges, appellant wrote Howard a letter asking her to change her statement and to implicate someone else in the crime. Appellant argues that the letter is not independent corroboration, but is instead evidence that also must be corroborated. We do not consider this argument because it is raised for the first time on appeal.[20] Additionally, the letter was introduced into evidence without any objection from appellant.

Even if Howard's testimony is eliminated, the other evidence presented independently established the crime and tended to connect appellant with its commission. We hold that the State provided sufficient evidence to corroborate Howard's testimony. Thus, the trial court did not err in denying appellant's motion for directed verdict.

Appellant argues that the trial court erred by denying his motion to disclose the identity of the CI. He acknowledges the line of cases that state that the CI's identity is not required when the defendant is charged with possession with intent to deliver; however, he argues that his case is distinguishable because he is attacking the validity of the stop itself.

Our supreme court discussed the CI privilege in *Hill v. State:*[21]

[D]isclosure shall not be required of an informant's identity where his identity is a prosecution secret, and a failure to disclose will not infringe upon the constitutional rights of the defendant. "When the disclosure of the informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." In determining whether the privilege shall prevail, the trial court must balance the public interest in getting needed information against the individual's right to assert a defense. The trial court must consider the crime charged, the possible defenses, the significance of the informant's testimony, and any "other relevant factors." The burden is upon the defendant to show that the informant's testimony is essential to his defense.

(Internal citations omitted.)

Here, appellant was not charged with delivery of a controlled substance that would have directly involved the CI, but was charged with possession with intent to deliver. Thus, the CI did not directly participate in the crime although his involvement led to appellant's vehicle being watched by the narcotics task force. The detectives' personal observations led to their decision to have a patrol unit stop appellant's vehicle. Appellant has failed to meet his burden of showing that the identity of the CI was necessary to his defense. The CI was not present when appellant's

20. *Rye v. State,* 2009 Ark. App. 839, 373 S.W.3d 354.

21. 314 Ark. 275, 862 S.W.2d 836 (1993).

vehicle was stopped or when the drugs were found. There is also no evidence that the CI participated in any criminal activity. Thus, the trial court did not err by denying appellant's motion to disclose the CI's identity.

 Next, appellant argues that the trial court erred by denying his motion to suppress because the officers did not have reasonable suspicion to conduct a traffic stop on his vehicle. When reviewing the trial court's denial of a motion to suppress, we conduct a de novo review, looking at the totality of the circumstances.[22] In doing so, we review the trial court's historical factual findings for clear error.[23] We then analyze whether those facts give rise to reasonable suspicion or probable cause, always giving due deference to the inferences drawn by the trial court.[24] Arkansas Rule of Criminal Procedure 3.1 provides in pertinent part:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Reasonable suspicion is defined as "suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion."[25] It is an objective inquiry, and "due weight must be given to the specific reasonable inferences an officer is entitled to derive from the situation in light of his experience as a police officer."[26] The legislature has provided factors for the trial court to consider in its analysis, including any information received from third persons, whether they are known or unknown.[27]

 Here, detectives with BNTF acted on a tip from a CI, who provided information that appellant was going to deliver methamphetamine to the CI at an E–Z Mart located on Highway 71. Detective Keller testified at the suppression hearing that he had used the CI before on "prove-ups" and considered the CI to be reliable. Detective Keller stated that he set up surveillance at the E–Z Mart located at Highways 71 and 245 and saw a car matching the description given to him by the CI. At some point, Det. Keller received a call from the CI stating that he was at a different E–Z Mart and that appellant had not shown up. Detective Keller had the CI call appellant and tell him to come to the other E–Z Mart. A short time later, Det. Keller noticed the vehicle that he had been watching leave the E–Z Mart and go south on Highway 71. At that point, a decision was made to have appellant's vehicle stopped by a patrol unit. Considering the totality of the circumstances, we hold that reasonable suspicion existed for Officer Harness to stop appellant's vehicle. Therefore, the trial court did not err by denying appellant's motion to suppress.

22. *Mhoon v. State*, 369 Ark. 134, 251 S.W.3d 244 (2007).

23. *Id.*

24. *Id.*

25. Ark. R.Crim. P. 2.1.

26. *Summers v. State*, 90 Ark.App. 25, 31, 203 S.W.3d 638, 642 (2005) (quotation omitted).

27. Ark.Code Ann. § 16–81–203 (Repl.2005).

Finally, appellant argues that the trial court erred by admitting State's Exhibits 5 and 8 into evidence. According to appellant, "the break in the chain of custody of [the exhibits] . . ., rendered both exhibits inadmissible." The decision of whether to admit evidence is a matter within the discretion of the trial court and will not be reversed absent an abuse of discretion.[28] The purpose of establishing the chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic.[29] The trial court must be satisfied within a reasonable probability that the evidence has not been tampered with, but it is not necessary that the State eliminate every possibility of tampering.[30] Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law.[31] While proof of the chain of custody for interchangeable items like blood or drugs needs to be more conclusive than for other evidence, the mere possibility of access to these items, where there is no evidence of tampering, is not enough to render the evidence or the test results inadmissible.[32] Any inconsistencies in the testimony offered to establish chain of custody are for the trier of fact to resolve.[33]

Detective Phelps testified that she removed the glove containing the methamphetamine from Howard's person and gave the evidence to Det. Atchley. However, Det. Atchley did not testify that he took the items from the scene and placed them in the evidence locker. He stated that he removed the evidence from the locker where an officer would have logged the evidence. Appellant has failed to make any argument that the drugs removed from Howard were not the same as, or in the same condition as, the ones sent to the crime lab. Instead, he argues that since no one could account for how the evidence got from the scene of the stop to the evidence locker, the court erred by admitting those items into evidence. Because there has been no showing of evidence tampering, the court did not abuse its discretion by admitting Exhibits 5 and 8 into evidence.

Affirmed.

ROBBINS, WYNNE, GRUBER, and GLOVER, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

Two of the four issues before us demand that we reverse this case: the lack of sufficient corroboration of the accomplice's testimony and the failure to disclose the identity of the confidential informant (CI). Further, a third argument concerning whether there was reasonable suspicion to make the traffic stop that led to Owens's arrest, is only affirmable because of the direct involvement of the CI in this case, the very reason that his—or her—identity had to be disclosed. The chain-of-custody issue is not meritorious because of the evolution of judge-made law over the last decade or so.

28. *White v. State,* 330 Ark. 813, 958 S.W.2d 519 (1997).

29. *Guydon v. State,* 344 Ark. 251, 39 S.W.3d 767 (2001).

30. *Crisco v. State,* 328 Ark. 388, 943 S.W.2d 582 (1997).

31. *Id.*

32. *See Dansby v. State,* 338 Ark. 697, 1 S.W.3d 403 (1999).

33. *Id.*

The lack of sufficient corroboration of Ashley Howard's testimony should require us to reverse and dismiss this case. A conviction in a felony case cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl.2005). Although the corroborating evidence need not be sufficient in and of itself to sustain a conviction, it must nonetheless be substantial. *Andrews v. State,* 344 Ark. 606, 42 S.W.3d 484 (2001). The corroborating evidence may be circumstantial so long as it is substantial. *Green v. State,* 365 Ark. 478, 231 S.W.3d 638 (2006). Evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.* The test is whether, after the testimony of the accomplice is completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin v. State,* 346 Ark. 198, 57 S.W.3d 136 (2001). Corroboration is insufficient if it merely shows that the offense was committed and the circumstances thereof. Ark.Code Ann. § 16–89–111(e)(1)(B).

The majority opinion recites many facts, but it fails to specify what evidence corroborates Howard's testimony. Exclude Howard's testimony and all that remains is a police officer's testimony that he and another officer observed an automobile driven by Owens leaving a convenience store and turning onto U.S. Highway 71. This testimony does not even establish that Owens was being directed by the CI because the accomplice alone provided that evidence, testifying that she, not Owens, spoke with the CI. Accordingly, a jury would have to speculate that Owens was en route to the other convenience store. Of course, identifying Owens as the owner of the drugs also depended upon Howard's testimony; she claimed that drugs she had stashed in her pants belonged to Owens. Likewise, the inculpatory letter that Owens supposedly wrote to Howard was produced by Howard and authenticated by Howard, and Howard's testimony identified Owens as the author. The State made no attempt to analyze the handwriting in the letter or dust it for Owens's fingerprints. Accordingly, we should reverse and dismiss this case on Owens's sufficiency argument.

The trial court also committed reversible error by not ordering the State to disclose the identity of the CI. The majority correctly notes that the test for whether a CI's identity must be disclosed is whether the CI actively participated in the crime. *Hill v. State, supra.* Here, the evidence clearly establishes that the CI participated in the crime. In pertinent part, under Arkansas Code Annotated section 5–2–403 (Repl.2006), an accomplice is defined as follows:

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

. . . .

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result.

Here, the CI did not merely identify Owens as a drug trafficker. He—or she—also set up a buy at the E–Z Mart and facilitated what the State asserts was a delivery of narcotics. Should that be the case, then the CI solicited and aided in the commission of the offense, which makes the CI an accomplice. The trial court therefore erred by not ordering the State to disclose the identity of the CI.

Interestingly enough, the direct involvement of the CI in this offense is the reason why there was reasonable suspicion to stop Owens's vehicle. We do not have, as Owens argues, only the vague description of a black man in a dark-colored car. Instead, we are confronted by an ongoing narcotics transaction set up by the CI and real-time direction of the target vehicle by the CI that made an otherwise innocent maneuver, *i.e.*, leaving a convenience store and turning onto U.S. Highway 71, suspicious.

Finally, with regard to the chain-of-custody issue, I believe the state of the law in Arkansas is that a break in the chain will affect only the "weight" of the evidence. *Washington v. State*, 2010 Ark. App. 596, 377 S.W.3d 518. However, I note that this rule of law conflicts with our supreme court's admonition in *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997), that proof of chain of custody for interchangeable items like drugs or blood needs to be more conclusive than for other items of evidence.