(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BLUEFORD *v.* ARKANSAS

### CERTIORARI TO THE SUPREME COURT OF ARKANSAS

No. 10–1320. Argued February 22, 2012—Decided May 24, 2012

The State of Arkansas charged petitioner Alex Blueford with capital murder for the death of a one-year-old child. That charge included the lesser offenses of first-degree murder, manslaughter, and negligent homicide. Before the start of deliberations, the trial court instructed the jury to consider the offenses as follows: "If you have a reasonable doubt of the defendant's guilt on the charge of capital murder, you will consider the charge of murder in the first degree. . . . If you have a reasonable doubt of the defendant's guilt on the charge of murder in the first degree, you will then consider the charge of manslaughter. . . . If you have a reasonable doubt of the defendant's guilt on the charge of manslaughter, you will then consider the charge of negligent homicide." The court also presented the jury with a set of verdict forms, which allowed the jury either to convict Blueford of one of the charged offenses, or to acquit him of all of them. Acquitting on some but not others was not an option.

After deliberating for a few hours, the jury reported that it could not reach a verdict. The court inquired about the jury's progress on each offense. The foreperson disclosed that the jury was unanimous against guilt on the charges of capital murder and first-degree murder, was deadlocked on manslaughter, and had not voted on negligent homicide. The court told the jury to continue to deliberate. The jury did so but still could not reach a verdict, and the court declared a mistrial. When the State subsequently sought to retry Blueford, he moved to dismiss the capital and first-degree murder charges on double jeopardy grounds. The trial court denied the motion, and the Supreme Court of Arkansas affirmed on interlocutory appeal.

*Held:* The Double Jeopardy Clause does not bar retrying Blueford on charges of capital murder and first-degree murder. Pp. 5−10.

  (a) The jury did not acquit Blueford of capital or first-degree mur-

der. Blueford contends that the foreperson's report that the jury was unanimous against guilt on the murder offenses represented a resolution of some or all of the elements of those offenses in his favor. But the report was not a final resolution of anything. When the foreperson told the court how the jury had voted on each offense, the jury's deliberations had not yet concluded. The jurors in fact went back to the jury room to deliberate further, and nothing in the court's instructions prohibited them from reconsidering their votes on capital and first-degree murder as deliberations continued. The foreperson's report prior to the end of deliberations therefore lacked the finality necessary to amount to an acquittal on those offenses. That same lack of finality undermines Blueford's reliance on *Green* v. *United States,* 355 U. S. 184, and *Price* v. *Georgia,* 398 U. S. 323. In both of those cases, the verdict of the jury was a final decision; here, the report of the foreperson was not. Pp. 5−8.

(b) The trial court's declaration of a mistrial was not improper. A trial can be discontinued without barring a subsequent one for the same offense when "particular circumstances manifest a necessity" to declare a mistrial. *Wade* v. *Hunter,* 336 U. S. 684, 690. Blueford contends that there was no necessity for a mistrial on capital and first-degree murder, given the foreperson's report that the jury had voted unanimously against guilt on those charges. According to Blueford, the court at that time should have taken some action, whether through new partial verdict forms or other means, to allow the jury to give effect to those votes, and then considered a mistrial only as to the remaining charges. Blueford acknowledges, however, that the trial court's reason for declaring a mistrial here—that the jury was unable to reach a verdict—has long been considered the "classic basis" establishing necessity for doing so. *Arizona* v. *Washington,* 434 U. S. 497, 509. And this Court has never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse—let alone to consider giving the jury new options for a verdict. See *Renico* v. *Lett,* 559 U. S. ___, ___. As permitted under Arkansas law, the jury's options in this case were limited to two: either convict on one of the offenses, or acquit on all. The trial court did not abuse its discretion by refusing to add another option—that of acquitting on some offenses but not others. Pp. 9−10.

2011 Ark. 8, ___ S. W. 3d ___, affirmed.

ROBERTS, C. J., delivered the opinion of the Court, in which SCALIA, KENNEDY, THOMAS, BREYER, and ALITO, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which GINSBURG and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–1320

ALEX BLUEFORD, PETITIONER *v.* ARKANSAS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
ARKANSAS

[May 24, 2012]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The Double Jeopardy Clause protects against being tried twice for the same offense. The Clause does not, however, bar a second trial if the first ended in a mistrial. Before the jury concluded deliberations in this case, it reported that it was unanimous against guilt on charges of capital murder and first-degree murder, was deadlocked on manslaughter, and had not voted on negligent homicide. The court told the jury to continue to deliberate. The jury did so but still could not reach a verdict, and the court declared a mistrial. All agree that the defendant may be retried on charges of manslaughter and negligent homicide. The question is whether he may also be retried on charges of capital and first-degree murder.

## I

One-year-old Matthew McFadden, Jr., suffered a severe head injury on November 28, 2007, while home with his mother's boyfriend, Alex Blueford. Despite treatment at a hospital, McFadden died a few days later.

The State of Arkansas charged Blueford with capital murder, but waived the death penalty. The State's theory

at trial was that Blueford had injured McFadden inten-
tionally, causing the boy's death "[u]nder circumstances
manifesting extreme indifference to the value of human
life."   Ark. Code Ann. §5–10–101(a)(9)(A) (Supp. 2011).
The defense, in contrast, portrayed the death as the re-
sult of Blueford accidentally knocking McFadden onto the
ground.

The trial court instructed the jury that the charge of
capital murder included three lesser offenses: first-degree
murder, manslaughter, and negligent homicide.  In addi-
tion to describing these offenses, the court addressed the
order in which the jury was to consider them: "If you have
a reasonable doubt of the defendant's guilt on the charge
of capital murder, you will consider the charge of murder
in the first degree. . . . If you have a reasonable doubt of
the defendant's guilt on the charge of murder in the first
degree, you will then consider the charge of manslaugh-
ter. . . . If you have a reasonable doubt of the defendant's
guilt on the charge of manslaughter, you will then con-
sider the charge of negligent homicide."  App. 51–52.

The prosecution commented on these instructions in its
closing argument.  It told the jury, for example, that "be-
fore you can consider a lesser included of capital murder,
you must first, all 12, vote that this man is not guilty of
capital murder."  *Id.,* at 55.  The prosecution explained
that this was "not a situation where you just lay every-
thing out here and say, well, we have four choices.  Which
one does it fit the most?"  *Id.,* at 59.  Rather, the prose-
cution emphasized, "unless all 12 of you agree that this
man's actions were not consistent with capital murder,
then and only then would you go down to murder in the
first degree."  *Ibid.*

After the parties concluded their arguments, the court
presented the jury with a set of five verdict forms, each
representing a possible verdict.  There were four separate
forms allowing the jury to convict on each of the charged

offenses: capital murder, first-degree murder, manslaughter, and negligent homicide. A fifth form allowed the jury to return a verdict of acquittal, if the jury found Blueford not guilty of any offense. There was no form allowing the jury to acquit on some offenses but not others. As stated in the court's instructions, the jury could either "find the defendant guilty of one of these offenses" or "acquit him outright." *Id.,* at 51. Any verdict—whether to convict on one or to acquit on all—had to be unanimous.

A few hours after beginning its deliberations, the jury sent the court a note asking "what happens if we cannot agree on a charge at all." *Id.,* at 62. The court called the jury back into the courtroom and issued a so-called "*Allen* instruction," emphasizing the importance of reaching a verdict. See *Allen* v. *United States*, 164 U. S. 492, 501–502 (1896). The jury then deliberated for a half hour more before sending out a second note, stating that it "cannot agree on any one charge in this case." App. 64. When the court summoned the jury again, the jury foreperson reported that the jury was "hopelessly" deadlocked. *Ibid.* The court asked the foreperson to disclose the jury's votes on each offense:

> "THE COURT: All right. If you have your numbers together, and I don't want names, but if you have your numbers I would like to know what your count was on capital murder.
> "JUROR NUMBER ONE: That was unanimous against that. No.
> "THE COURT: Okay, on murder in the first degree?
> "JUROR NUMBER ONE: That was unanimous against that.
> "THE COURT: Okay. Manslaughter?
> "JUROR NUMBER ONE: Nine for, three against.
> "THE COURT: Okay. And negligent homicide?
> "JUROR NUMBER ONE: We did not vote on that,

sir.

> "THE COURT: Did not vote on that.
>
> "JUROR NUMBER ONE: No, sir. We couldn't get past the manslaughter. Were we supposed to go past that? I thought we were supposed to go one at a time." *Id.,* at 64–65.

Following this exchange, the court gave another *Allen* instruction and sent the jurors back to the jury room. After deliberations resumed, Blueford's counsel asked the court to submit new verdict forms to the jurors, to be completed "for those counts that they have reached a verdict on." *Id.,* at 67. The prosecution objected on the grounds that the jury was "still deliberating" and that a verdict of acquittal had to be "all or nothing." *Id.,* at 68. The court denied Blueford's request. To allow for a partial verdict, the court explained, would be "like changing horses in the middle of the stream," given that the jury had already received instructions and verdict forms. *Ibid.* The court informed counsel that it would declare a mistrial "if the jury doesn't make a decision." *Id.,* at 69.

When the jury returned a half hour later, the foreperson stated that they had not reached a verdict. The court declared a mistrial and discharged the jury.

The State subsequently sought to retry Blueford. He moved to dismiss the capital and first-degree murder charges on double jeopardy grounds, citing the foreperson's report that the jurors had voted unanimously against guilt on those offenses. The trial court denied the motion, and the Supreme Court of Arkansas affirmed on interlocutory appeal. According to the State Supreme Court, the foreperson's report had no effect on the State's ability to retry Blueford, because the foreperson "was not making a formal announcement of acquittal" when she disclosed the jury's votes. 2011 Ark. 8, p. 9, ___ S. W. 3d ___, ___. This was not a case, the court observed, "where a formal verdict

was announced or entered of record." *Ibid.* The court added that the trial court did not err in denying Blueford's request for new verdict forms that would have allowed the jury to render a partial verdict on the charges of capital and first-degree murder.

Blueford sought review in this Court, and we granted certiorari. 565 U. S. \_\_\_ (2011).

## II

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const., Amdt. 5. The Clause "guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 569 (1977) (internal quotation marks omitted).

Blueford contends that the foreperson's report means that he cannot be tried again on charges of capital and first-degree murder. According to Blueford, the Double Jeopardy Clause prohibits a second trial on those charges, for two reasons.

## A

Blueford's primary submission is that he cannot be retried for capital and first-degree murder because the jury actually acquitted him of those offenses. See *Green* v. *United States*, 355 U. S. 184, 188 (1957). The Arkansas Supreme Court noted—and Blueford acknowledges—that no formal judgment of acquittal was entered in his case. But none was necessary, Blueford maintains, because an acquittal is a matter of substance, not form. Quoting from our decision in *Martin Linen*, *supra*, at 571, Blueford

contends that despite the absence of a formal verdict, a jury's announcement constitutes an acquittal if it "'actually represents a resolution . . . of some or all of the factual elements of the offense charged.'"  Brief for Petitioner 21. Here, according to Blueford, the foreperson's announcement of the jury's unanimous votes on capital and first-degree murder represented just that: a resolution of some or all of the elements of those offenses in Blueford's favor.

We disagree.  The foreperson's report was not a final resolution of anything.  When the foreperson told the court how the jury had voted on each offense, the jury's deliberations had not yet concluded.  The jurors in fact went back to the jury room to deliberate further, even after the foreperson had delivered her report.  When they emerged a half hour later, the foreperson stated only that they were unable to reach a verdict.  She gave no indication whether it was still the case that all 12 jurors believed Blueford was not guilty of capital or first-degree murder, that 9 of them believed he was guilty of manslaughter, or that a vote had not been taken on negligent homicide.  The fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder offenses.

Blueford maintains, however, that any possibility that the jurors revisited the murder offenses was foreclosed by the instructions given to the jury.  Those instructions, he contends, not only required the jury to consider the offenses in order, from greater to lesser, but also prevented it from transitioning from one offense to the next without unanimously—and definitively—resolving the greater offense in his favor.  "A jury is presumed to follow its instructions."  *Weeks* v. *Angelone*, 528 U. S. 225, 234 (2000).  So, Blueford says, the foreperson's report that the jury was deadlocked on manslaughter necessarily establishes that the jury had acquitted Blueford of the greater offenses of capital and first-degree murder.

But even if we assume that the instructions required a unanimous vote before the jury could consider a lesser offense—as the State assumes for purposes of this case, see Brief for Respondent 25, n. 3—nothing in the instructions prohibited the jury from reconsidering such a vote. The instructions said simply, "If you have a reasonable doubt of the defendant's guilt on the charge of [the greater offense], you will [then] consider the charge of [the lesser offense]." App. 51–52. The jurors were never told that once they had a reasonable doubt, they could not rethink the issue. The jury was free to reconsider a greater offense, even after considering a lesser one.[1]

A simple example illustrates the point. A jury enters the jury room, having just been given these instructions. The foreperson decides that it would make sense to determine the extent of the jurors' agreement before discussions begin. Accordingly, she conducts a vote on capital murder, and everyone votes against guilt. She does the same for first-degree murder, and again, everyone votes against guilt. She then calls for a vote on manslaughter, and there is disagreement. Only then do the jurors engage in a discussion about the circumstances of the crime. While considering the arguments of the other jurors on how the death was caused, one of the jurors starts rethinking his own stance on a greater offense. After reflecting on the evidence, he comes to believe that the defendant did knowingly cause the death—satisfying the definition of

——————

[1] In reaching a contrary conclusion, *post,* at 6 (opinion of SOTOMAYOR, J.), the dissent construes the jury instructions to "require a jury to *complete* its deliberations on a greater offense before it may consider a lesser," *post,* at 3 (emphasis added). But no such requirement can be found in the text of the instructions themselves. And the dissent's attempt to glean such a requirement from the Arkansas Supreme Court's decision in *Hughes* v. *State*, 347 Ark. 696, 66 S. W. 3d 645 (2002), is unavailing, for that decision nowhere addresses the issue here—whether a jury can reconsider a greater offense after considering a lesser one.

first-degree murder.  At that point, nothing in the instruc-
tions prohibits the jury from doing what juries often do:
revisit a prior vote.  "The very object of the jury system,"
after all, "is to secure unanimity by a comparison of views,
and by arguments among the jurors themselves."  *Allen*,
164 U. S., at 501.  A single juror's change of mind is all it
takes to require the jury to reconsider a greater offense.

It was therefore possible for Blueford's jury to revisit the
offenses of capital and first-degree murder, notwithstand-
ing its earlier votes.  And because of that possibility, the
foreperson's report prior to the end of deliberations lacked
the finality necessary to amount to an acquittal on those
offenses, quite apart from any requirement that a formal
verdict be returned or judgment entered.

That same lack of finality undermines Blueford's reli-
ance on *Green* v. *United States*, 355 U. S. 184 (1957), and
*Price* v. *Georgia*, 398 U. S. 323 (1970).  In those cases, we
held that the Double Jeopardy Clause is violated when
a defendant, tried for a greater offense and convicted of
a lesser included offense, is later retried for the greater
offense.  See *Green, supra,* at 190; *Price, supra,* at 329.
Blueford argues that the only fact distinguishing his case
from *Green* and *Price* is that his case involves a deadlock
on the lesser included offense, as opposed to a conviction.
In his view, that distinction only favors him, because the
Double Jeopardy Clause should, if anything, afford greater
protection to a defendant who is *not* found guilty of the
lesser included offense.

Blueford's argument assumes, however, that the votes
reported by the foreperson did not change, even though
the jury deliberated further after that report.  That as-
sumption is unjustified, because the reported votes were,
for the reasons noted, not final.  Blueford thus overlooks
the real distinction between the cases: In *Green* and *Price*,
the verdict of the jury was a final decision; here, the report
of the foreperson was not.

B

Blueford maintains that even if the jury did not acquit him of capital and first-degree murder, a second trial on those offenses would nonetheless violate the Double Jeopardy Clause, because the trial court's declaration of a mistrial was improper. Blueford acknowledges that a trial can be discontinued without barring a subsequent one for the same offense when "particular circumstances manifest a necessity" to declare a mistrial. *Wade* v. *Hunter*, 336 U. S. 684, 690 (1949); see also *United States* v. *Perez*, 9 Wheat. 579, 580 (1824). He also acknowledges that the trial court's reason for declaring a mistrial here—that the jury was unable to reach a verdict—has long been considered the "classic basis" establishing such a necessity. *Arizona* v. *Washington*, 434 U. S. 497, 509 (1978). Blueford therefore accepts that a second trial on manslaughter and negligent homicide would pose no double jeopardy problem. He contends, however, that there was no necessity for a mistrial on capital and first-degree murder, given the foreperson's report that the jury had voted unanimously against guilt on those charges. According to Blueford, the court at that time should have taken "some action," whether through partial verdict forms or other means, to allow the jury to give effect to those votes, and then considered a mistrial only as to the remaining charges. Reply Brief for Petitioner 11, n. 8.

We reject that suggestion. We have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse—let alone to consider giving the jury new options for a verdict. See *Renico* v. *Lett*, 559 U. S. ___, ___ (2010) (slip op., at 8).[2] As permitted under Arkansas law, the

――――――――

[2] Finding our reliance on *Renico* "perplexing," the dissent reads that decision to have "little to say about a trial judge's responsibilities, or this Court's, on direct review." *Post*, at 10–11, n. 4. But *Renico*'s

jury's options in this case were limited to two: either convict on one of the offenses, or acquit on all. The instructions explained those options in plain terms, and the verdict forms likewise contemplated no other outcome. There were separate forms to convict on each of the possible offenses, but there was only one form to acquit, and it was to acquit on all of them. When the foreperson disclosed the jury's votes on capital and first-degree murder, the trial court did not abuse its discretion by refusing to add another option—that of acquitting on some offenses but not others. That, however, is precisely the relief Blueford seeks—relief the Double Jeopardy Clause does not afford him.

\*      \*      \*

The jury in this case did not convict Blueford of any offense, but it did not acquit him of any either. When the jury was unable to return a verdict, the trial court properly declared a mistrial and discharged the jury. As a consequence, the Double Jeopardy Clause does not stand in the way of a second trial on the same offenses.

The judgment of the Supreme Court of Arkansas is

*Affirmed.*

---

discussion of the applicable legal principles concerns just that, and the dissent in any event does not dispute that we have never required a trial court to consider any particular means of breaking a jury impasse.

# SUPREME COURT OF THE UNITED STATES

————

No. 10–1320

————

## ALEX BLUEFORD, PETITIONER *v.* ARKANSAS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
ARKANSAS

[May 24, 2012]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG
and JUSTICE KAGAN join, dissenting.

The Double Jeopardy Clause "unequivocally prohibits a
second trial following an acquittal." *Arizona* v. *Washington*, 434 U. S. 497, 503 (1978).  To implement this rule, our
cases have articulated two principles.  First, an acquittal
occurs if a jury's decision, "whatever its label, actually represents a resolution, correct or not, of some or all of the
factual elements of the offense charged." *United States* v.
*Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977).  Second, a trial judge may not defeat a defendant's entitlement
to "the verdict of a tribunal he might believe to be favorably disposed to his fate" by declaring a mistrial before
deliberations end, absent a defendant's consent or a
"'manifest necessity'" to do so.  *United States* v. *Jorn*, 400
U. S. 470, 486, 481 (1971) (plurality opinion) (quoting
*United States* v. *Perez*, 9 Wheat. 579, 580 (1824)).

Today's decision misapplies these longstanding principles.  The Court holds that petitioner Alex Blueford
was not acquitted of capital or first-degree murder, even
though the forewoman of the Arkansas jury empaneled to
try him announced in open court that the jury was "unanimous against" convicting Blueford of those crimes.  Nor,
the Court concludes, did the Double Jeopardy Clause
oblige the trial judge to take any action to give effect to the
jury's unambiguous decision before declaring a mistrial as

to those offenses. The Court thus grants the State what the Constitution withholds: "the proverbial 'second bite at the apple.'" *Burks* v. *United States*, 437 U. S. 1, 17 (1978).

I respectfully dissent.

## I

## A

The bar on retrials following acquittals is "the most fundamental rule in the history of double jeopardy jurisprudence." *Martin Linen*, 430 U. S., at 571; see, *e.g., United States* v. *Ball*, 163 U. S. 662, 671 (1896); 4 W. Blackstone, Commentaries on the Laws of England 329 (1769). This prohibition stops the State, "with all its resources and power," from mounting abusive, harassing reprosecutions, *Green* v. *United States*, 355 U. S. 184, 187 (1957), which subject a defendant to "embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent," *United States* v. *DiFrancesco*, 449 U. S. 117, 136 (1980).

In ascertaining whether an acquittal has occurred, "form is not to be exalted over substance." *Sanabria* v. *United States*, 437 U. S. 54, 66 (1978). Rather, we ask whether the factfinder has made "a substantive determination that the prosecution has failed to carry its burden." *Smith* v. *Massachusetts*, 543 U. S. 462, 468 (2005). Jurisdictions have different procedures respecting the announcement of verdicts and the entry of judgments, but that diversity has no constitutional significance. Jeopardy terminates upon a determination, however characterized, that the "evidence is insufficient" to prove a defendant's "factual guilt." *Smalis* v. *Pennsylvania*, 476 U. S. 140, 144 (1986). Thus, we have treated as acquittals a trial judge's directed verdict of not guilty, *Smith*, 543 U. S., at 468; an appellate reversal of a conviction for insufficiency of the evidence, *Burks*, 437 U. S., at 10; and, most pertinent here, a jury's announcement of a not guilty verdict that

was "not followed by any judgment," *Ball*, 163 U. S., at 671.

A straightforward application of that principle suffices to decide this case. Arkansas is a classic "acquittal-first" or "hard-transition" jurisdiction. See generally *People* v. *Richardson*, 184 P. 3d 755, 764, n. 7 (Colo. 2008). Arkansas' model jury instructions require a jury to complete its deliberations on a greater offense before it may consider a lesser. 1 Ark. Model Jury Instr., Crim., No. 302 (2d ed. 1994). As a matter of Arkansas law, "[b]efore it may consider any lesser-included offense, the jury must first determine that the proof is insufficient to convict on the greater offense. Thus, the jury must, in essence, acquit the defendant of the greater offense before considering his or her guilt on the lesser-included offense." *Hughes* v. *State*, 347 Ark. 696, 706–707, 66 S. W. 3d 645, 651 (2002).[1]

Here, the trial judge instructed Blueford's jury to consider the offenses in order, from the charged offense of capital murder to the lesser included offenses of first-degree murder, manslaughter, and negligent homicide. The judge told the jury to proceed past capital murder only upon a unanimous finding of a "reasonable doubt" as to that offense—that is, upon an acquittal. See *In re Winship*, 397 U. S. 358, 363 (1970). The State's closing arguments repeated this directive: "[B]efore you can consider a lesser included of capital murder, you must first, all 12, vote that this man is not guilty of capital murder." App. 55. And the forewoman's colloquy with the judge leaves no doubt that the jury understood the instructions to mandate unanimous acquittal on a greater offense as a prerequisite to consideration of a lesser: The forewoman

---

[1] The State has taken the same position. See Brief for Appellee in *Boyd* v. *State*, No. CR 06–973 (Ark.), p. 13 ("[U]nanimity is the essence of a jury verdict as it pertains to acquitting a defendant of the charged offense and the subsequent consideration of lesser-included offenses").

reported that the jury had not voted on negligent homicide because the jurors "couldn't get past the manslaughter" count on which they were deadlocked. *Id.,* at 65.

In this context, the forewoman's announcement in open court that the jury was "unanimous against" conviction on capital and first-degree murder, *id.,* at 64–65, was an acquittal for double jeopardy purposes.[2] Per Arkansas law, the jury's determination of reasonable doubt as to those offenses was an acquittal "in essence." *Hughes*, 347 Ark., at 707, 66 S. W. 3d, at 651. By deciding that the State "had failed to come forward with sufficient proof," the jury resolved the charges of capital and first-degree murder adversely to the State. *Burks*, 437 U. S., at 10. That acquittal cannot be reconsidered without putting Blueford twice in jeopardy.

*Green* and *Price* v. *Georgia*, 398 U. S. 323 (1970), bolster

——————

[2] The jury's acquittals on the murder counts were unsurprising in light of the deficiencies in the State's case. For example, Dr. Adam Craig—the medical examiner who autopsied the victim, Matthew McFadden, Jr., and whose testimony was essential to the State's theory of the crime—was not board certified in anatomical pathology, having failed the certification examination five times. Dr. Craig took only 2 slides of Matthew's brain, not the 10 to 20 called for by prevailing professional standards. He dismissed Blueford's explanation for Matthew's death—that Blueford accidentally knocked Matthew to the floor—on the basis of an outdated paper on child head injuries, acknowledging that he was only "vaguely aware" of a more recent, seminal paper that supported Blueford's account. Record 390; see Goldsmith & Plunkett, A Biomechanical Analysis of the Causes of Traumatic Brain Injury in Infants and Children, 25 Am. J. Forensic Med. & Pathology 89 (2004). Blueford's expert pathologist, Dr. Robert Bux, testified that Dr. Craig's autopsy was inadequate to establish whether Matthew's death was accidental or intentional. And Blueford's expert pediatrician, Dr. John Galaznik, testified that the State's theory—that Blueford slammed Matthew into a mattress on the floor—was "not a likely cause" of the boy's injuries when assessed in view of current medical literature. Record 766. Even the trial judge observed that the State's proof was "circumstantial at best," and that this was "probably . . . a lesser included offense case." *Id.,* at 610.

that conclusion. In *Green*, the jury convicted the defendant on the lesser included offense of second-degree murder without returning a verdict on the charged offense of first-degree murder. This Court concluded that this result was an "implicit acquittal" on the greater offense of first-degree murder, barring retrial. 355 U. S., at 190. The defendant "was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter." *Ibid.;* see also *Price*, 398 U. S., at 329 ("[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge" (footnote omitted)). Notably, *Green* acknowledged that its finding of an "implicit acquittal" was an "assumption," because the jury had made no express statement with respect to the greater offense. 355 U. S., at 190–191.

Blueford's position is even stronger because his jury was not silent on the murder counts, but announced that it was "unanimous against" conviction. And the trial judge specifically instructed the jury to consider manslaughter only after acquitting Blueford of the murder counts. Courts in several acquittal-first jurisdictions have held that a jury's deadlock on a lesser included offense justifies the assumption that the jury acquitted on any greater offenses. See *State* v. *Tate*, 256 Conn. 262, 283–285, 773 A. 2d. 308, 323–324 (2001); *Stone* v. *Superior Ct. of San Diego Cty.*, 31 Cal. 3d 503, 511–512, n. 5, 646 P. 2d 809, 815, n. 5 (1982). That assumption is not even necessary here because the jury unmistakably announced acquittal.

## B

The majority holds that the forewoman's announcement

was not an acquittal because it "was not a final resolution
of anything." *Ante,* at 6. In the majority's view, the jury
might have revisited its decisions on the murder counts
during the 31 minutes of deliberations that followed the
forewoman's announcement. We cannot know whether
the jury did so, the majority reasons, because the jury was
discharged without confirming that it remained "unani-
mous against" convicting Blueford of capital and first-
degree murder. *Ante,* at 6–8.[3]

Putting to one side the lack of record evidence to support
this speculation—by far the more plausible inference is
that the jurors spent those 31 minutes attempting to
resolve their deadlock on manslaughter—I do not agree
that the jury was free to reconsider its decisions when
its deliberations resumed. "A verdict of acquittal on the
issue of guilt or innocence is, of course, absolutely final."
*Bullington* v. *Missouri*, 451 U. S. 430, 445 (1981). The
jury heard instructions and argument that it was required
unanimously to acquit on capital and first-degree murder
before it could reach manslaughter. And as the forewom-
an's colloquy makes plain, the jury followed those instruc-
tions scrupulously. There is no reason to believe that the
jury's vote was anything other than a verdict in sub-
stance—that is, a "final collective decision . . . reached

—————

[3] This Court granted certiorari to decide "[w]hether, if a jury dead-
locks on a lesser-included offense, the Double Jeopardy Clause bars
reprosecution of a greater offense after a jury announces that it has
voted against guilt on the greater offense." Pet. for Cert. i. The major-
ity resolves the question presented by determining that the forewoman's
announcements were not final, such that Blueford's jury did not neces-
sarily deadlock on the lesser included offense of manslaughter. See
*ante,* at 8–9, n. 2. In light of that determination, I do not read today's
opinion to express any view with respect to the requirements of the
Double Jeopardy Clause where a jury *does* deadlock on a lesser in-
cluded offense. Cf., *e.g., State* v. *Tate*, 256 Conn. 262, 284–285, 773
A. 2d 308, 324–325 (2001); *Whiteaker* v. *State*, 808 P. 2d 270, 274
(Alaska App. 1991).

after full deliberation, consideration, and compromise among the individual jurors." *Harrison* v. *Gillespie*, 640 F. 3d 888, 906 (CA9 2011) (en banc). And when that decision was announced in open court, it became entitled to full double jeopardy protection. See, *e.g., Commonwealth* v. *Roth*, 437 Mass. 777, 796, 776 N. E. 2d 437, 450–451 (2002) (declining to give effect to ""'"the verdict received from the lips of the foreman in open court"'"' would "elevate form over substance"); *Stone*, 31 Cal. 3d, at 511, 646 P. 2d, at 814–815 ("[I]n determining what verdict, if any, a jury intended to return, the oral declaration of the jurors endorsing the result is the true return of the verdict" (internal quotation marks omitted)); see also, *e.g., Dixon* v. *State*, 29 Ark. 165, 171 (1874) (technical defect in verdict "is of no consequence whatever, for the verdict need not be in writing, but may be announced by the foreman of the jury orally"); *State* v. *Mills*, 19 Ark. 476 (1858) ("The verdict was of no validity until delivered, by the jury, in Court").

The majority's example of a jury that takes a preliminary vote on greater offenses, advances to the consideration of a lesser, and then returns to a greater, is inapposite. See *ante,* at 7. In the majority's example, the jury has not announced its vote in open court. Moreover, the instructions in this case did not contemplate that the jury's deliberations could take the course that the majority imagines. Arkansas' model instruction requires acquittal as a prerequisite to consideration of a lesser offense, and the Double Jeopardy Clause entitles an acquittal to finality. Indeed, the purpose of an acquittal-first instruction is to ensure careful and conclusive deliberation on a greater offense. See *United States* v. *Tsanas*, 572 F. 2d 340, 346 (CA2 1978) (Friendly, J.) (acquittal-first instruction avoids "the danger that the jury will not adequately discharge its duties with respect to the greater offense, and instead will move too quickly to the lesser"). True, Arkansas' instruc-

tion does not expressly forbid reconsideration, but it does not expressly permit reconsideration either. In any event, nothing indicates that the jury's announced decisions were tentative, compromises, or mere steps en route to a final verdict, and the Double Jeopardy Clause demands that ambiguity be resolved in favor of the defendant. See *Downum* v. *United States*, 372 U. S. 734, 738 (1963).

The fact that the jury was not given the express option of acquitting on individual offenses is irrelevant. See *ante,* at 3, 9. Arkansas law ascribes no significance to the presence of such options on a verdict form. See *Rowland* v. *State*, 263 Ark. 77, 85, 562 S. W. 2d 590, 594 (1978) ("The jury may prepare and present its own form of verdict"). The lack of a state procedural vehicle for the entry of a judgment of acquittal does not prevent the recognition of an acquittal for constitutional purposes. See *Hudson* v. *Louisiana*, 450 U. S. 40, 41, n. 1 (1981).

Finally, the majority's distinction of *Green* and *Price* is unavailing. The majority observes that *Green* and *Price*, unlike this case, involved final decisions. *Ante,* at 8. As I have explained, I view the forewoman's announcements of acquittal in this case as similarly final. In any event, *Green* clarified that the defendant's "claim of former jeopardy" was "not based on his previous conviction for second degree murder but instead on the original jury's refusal to convict him of first degree murder." 355 U. S.*,* at 190, n. 11; accord, *id.,* at 194, n. 14. That is, the jury's silence on the greater offense spoke with sufficient clarity to justify the assumption of acquittal and to invoke the Double Jeopardy Clause. *Id.,* at 191; see also *Price*, 398 U. S., at 329. In light of the forewoman's announcement, this is an *a fortiori* case.

In short, the Double Jeopardy Clause demands an inquiry into the substance of the jury's actions. Blueford's jury had the option to convict him of capital and first-degree murder, but expressly declined to do so. That

ought to be the end of the matter.

## II

### A

Even if the majority were correct that the jury might have reconsidered an acquitted count—a doubtful assumption for the reasons just explained—that would not defeat Blueford's double jeopardy claim. It "has been long established as an integral part of double jeopardy jurisprudence" that "a defendant could be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal." *Crist* v. *Bretz*, 437 U. S. 28, 34 (1978). This rule evolved in response to the "abhorrent" practice under the Stuart monarchs of terminating prosecutions, and thereby evading the bar on retrials, when it appeared that the Crown's proof might be insufficient. *Washington*, 434 U. S., at 507; see, *e.g., Ireland's Case*, 7 How. St. Tr. 79, 120 (1678). Accordingly, retrial is barred if a jury is discharged before returning a verdict unless the defendant consents or there is a "manifest necessity" for the discharge. *Perez*, 9 Wheat., at 580; see also *King* v. *Perkins*, 90 Eng. Rep. 1122 (K. B. 1698).

In *Perez*, this Court explained that "manifest necessity" is a high bar: "[T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." 9 Wheat., at 580. Since *Perez*, this Court has not relaxed the showing required. See, *e.g., Washington*, 434 U. S., at 506 (requiring a "'high degree'" of necessity); *Downum*, 372 U. S., at 736 ("imperious necessity"); see also, *e.g., United States* v. *Coolidge*, 25 F. Cas. 622, 623 (No. 14,858) (CC Mass. 1815) (Story, J.) ("extraordinary and striking circumstances"). Before declaring a mistrial, therefore, a trial judge must weigh heavily a "defendant's valued right to have his trial completed by a particular tribunal." *Wade* v. *Hunter*, 336 U. S. 684, 689 (1949). And in light of the historical abuses

against which the Double Jeopardy Clause guards, a trial judge must tread with special care where a mistrial would "help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori* v. *United States*, 367 U. S. 364, 369 (1961); see *Green*, 355 U. S., at 188.

A jury's genuine inability to reach a verdict constitutes manifest necessity. But in an acquittal-first jurisdiction, a jury that advances to the consideration of a lesser included offense has not demonstrated an inability to decide a defendant's guilt or innocence on a greater—it has acquitted on the greater. Under *Green*, that is unquestionably true if the jury convicts on the lesser. See *id.,* at 189. It would be anomalous if the Double Jeopardy Clause offered less protection to a defendant whose jury has deadlocked on the lesser and thus convicted of nothing at all. See *Stone*, 31 Cal. 3d, at 511–512, n. 5, 646 P. 2d, at 815, n. 5.

I would therefore hold that the Double Jeopardy Clause requires a trial judge, in an acquittal-first jurisdiction, to honor a defendant's request for a partial verdict before declaring a mistrial on the ground of jury deadlock. Courts in acquittal-first jurisdictions have so held. See, *e.g., Tate*, 256 Conn., at 285–287, 773 A. 2d, at 324–325; *Whiteaker* v. *State*, 808 P. 2d 270, 274 (Alaska App. 1991); *Stone*, 31 Cal. 3d, at 519, 646 P. 2d, at 820; *State* v. *Pugliese*, 120 N. H. 728, 730, 422 A. 2d 1319, 1321 (1980) *(per curiam)*; *State* v. *Castrillo*, 90 N. M. 608, 611, 566 P. 2d 1146, 1149 (1977); see also N. Y. Crim. Proc. Law Ann. §310.70 (West 2002). Requiring a partial verdict in an acquittal-first jurisdiction ensures that the jurisdiction takes the bitter with the sweet. In general, an acquittal-first instruction increases the likelihood of conviction on a greater offense. See *People* v. *Boettcher*, 69 N. Y. 2d 174, 182, 505 N. E. 2d 594, 597 (1987). True, such an instruction may also result in deadlock on a greater, preventing a State "from obtaining a conviction on the lesser charge

that would otherwise have been forthcoming and thus require the expense of a retrial." *Tsanas*, 572 F. 2d, at 346. But a State willing to incur that expense loses nothing by overcharging in an acquittal-first regime. At worst, the State enjoys a second opportunity to convict, "with the possibility that the earlier 'trial run' will strengthen the prosecution's case." *Crist*, 437 U. S., at 52 (Powell, J., dissenting). If a State wants the benefits of requiring a jury to acquit before compromising, it should not be permitted to deprive a defendant of the corresponding benefits of having been acquitted. The Double Jeopardy Clause expressly prohibits that outcome.

The majority observes that we "have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse—let alone to consider giving the jury new options for a verdict." *Ante,* at 10 (citing *Renico* v. *Lett*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 8)). That hands-off approach dilutes *Perez* beyond recognition. This Court has never excused a trial judge from exercising "scrupulous" care before discharging a jury. *Jorn*, 400 U. S., at 485 (plurality opinion). Rather, we have insisted that a trial judge may not act "irrationally," "irresponsibly," or "precipitately." *Washington*, 434 U. S., at 514–515. Nor have we retreated from the rule that "reviewing courts have an obligation to ensure themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.,* at 514 (quoting *Perez*, 9 Wheat., at 580).[4]

---

[4] The majority's reliance on *Renico*, a habeas corpus case decided under the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), is perplexing. As *Renico* made clear, the question there was "not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse

B

Even if the Double Jeopardy Clause did not compel that broader rule, the facts of this case confirm that there was no necessity, let alone manifest necessity, for a mistrial. There was no reason for the judge not to have asked the jury, prior to discharge, whether it remained "unanimous against" conviction on capital and first-degree murder. There would have been no intrusion on the jury's deliberative process. The judge was not required to issue new instructions or verdict forms, allow new arguments, direct further deliberations, or take any other action that might have threatened to coerce the jury. Merely repeating his earlier question would have sufficed. Because the judge failed to take even this modest step—or indeed, to explore any alternatives to a mistrial, or even to make an on-the-record finding of manifest necessity—I conclude that there was an abuse of discretion. See, *e.g., id.,* at 486; see also *Washington,* 434 U. S., at 525 (Marshall, J., dissenting) (manifest necessity requires showing "that there were no meaningful and practical alternatives to a mistrial, or that the trial court scrupulously considered available alternatives and found all wanting but a termination of the proceedings").

Indeed, the only reason I can divine for the judge's failure to take this modest step is his misperception of Arkansas law with respect to the transitional instruction. After the colloquy with the forewoman, the judge commented at sidebar that the jurors "haven't even taken a vote on [negligent homicide]. . . . I don't think they've completed their deliberation. . . . I mean, under any rea-

––––––––––

of discretion was 'an unreasonable application of . . . clearly established Federal law.'" 559 U. S., at ___ (slip op., at 5) (quoting 28 U. S. C. §2254(d)(1)); accord, 559 U. S*.,* at ___, n. 3 (slip op., at 11, n. 3). *Renico* thus has little to say about a trial judge's responsibilities, or this Court's, on direct review. Cf. *Cullen* v. *Pinholster,* 563 U. S. ___, ___ (2011) (slip op., at 30–31).

sonable circumstances, they would at least take a vote on negligent homicide." App. 65–66. And after the jury retired for the last half-hour of deliberations, the judge said, "I don't think they have an understanding of really that they don't have to get past every charge unanimously before they can move to the next charge." *Id.,* at 69. That misstated Arkansas law as well as the judge's own instructions. The jury was required to reach a unanimous decision on a greater offense before considering a lesser. See *supra,* at 2–3. In discharging the jury, the judge said, "Madam Foreman, there seems to be a lot of confusion on the part . . . of the jury about some of the instructions. And because of the confusion and because of the timeliness and the amount of hours that has gone by without being able to reach a verdict, the Court is going to declare a mistrial." App. 69–70.

If, as these comments suggest, the judge wrongly believed that the jury was not required to reach unanimity on a greater offense before considering a lesser, then he accorded insufficient finality and weight to the forewoman's earlier announcement of acquittal on capital and first-degree murder. That mistake of law negates the deference due the judge's decision to declare a mistrial. The judge explained that the jury was being discharged in part based on its "confusion" with respect to the instructions, when in fact, the confusion was the judge's. *Ibid.;* see, *e.g., Washington,* 434 U. S., at 510, n. 28 ("If the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for . . . deference by an appellate court disappears"); *Illinois* v. *Somerville,* 410 U. S. 458, 469 (1973) (critiquing "erratic" mistrial inquiry); *Gori,* 367 U. S., at 371, n. 3 (Douglas, J., dissenting) (noting that "[i]n state cases, a second prosecution has been barred where the jury was discharged through the trial judge's misconstruction of the law," and collecting cases). And a trial court "by definition abuses its discretion when it

makes an error of law." *Koon* v. *United States*, 518 U. S. 81, 100 (1996).

\*    \*    \*

At its core, the Double Jeopardy Clause reflects the wisdom of the founding generation, familiar to "'every person acquainted with the history of governments,'" that "'state trials have been employed as a formidable engine in the hands of a dominant administration. . . . To prevent this mischief the ancient common law . . . provided that one acquittal or conviction should satisfy the law.'" *Ex parte Lange*, 18 Wall. 163, 171 (1874) (quoting *Commonwealth* v. *Olds*, 15 Ky. 137, 139 (1824)). The Double Jeopardy Clause was enacted "'[t]o perpetuate this wise rule, so favorable and necessary to the liberty of the citizen in a government like ours.'" 18 Wall., at 171. This case demonstrates that the threat to individual freedom from reprosecutions that favor States and unfairly rescue them from weak cases has not waned with time. Only this Court's vigilance has.

I respectfully dissent.